[No. C006933. Third Dist. Jan. 23, 1990.]

JOHN LEWIS, Petitioner, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Blackmon & Drozd, Clyde M. Blackmon and Dale A. Drozd for Petitioner.

No appearance for Respondent.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John A. Gordnier, Assistant Attorney General, and W. Scott Thorpe, Deputy Attorney General, for Real Party in Interest.

## OPINION

**BLEASE, J.**—This petition for a writ of prohibition challenges the indictment of petitioner (defendant) for forgery. ■ We are asked to determine whether the definition of forgery in Penal Code section 470[1] extends to the fabrication of a signature on a letter of endorsement of a candidate for public office. We answer "no" and will grant the relief sought.

Section 470 is derived from the common law and its reach is thereby limited. Under the controlling case law a letter bearing a false signature urging people to vote for a candidate for public office is not an instrument which could "prejudice, damage, or defraud" any person, as those terms are used in section 470. (See, e.g., *People* v. *Wong Sam* (1897) 117 Cal. 29 [48 P. 972].) Unless the consequential harm of the fabrication is a loss, damage, or prejudice of a legal right, generally a pecuniary or property right, there is no

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

harm of the kind to which the statute is directed and hence no forgery. The attempted persuasion of another to vote does not implicate such a right.

This conclusion does not imply condonation of the alleged conduct. Rather, as the Supreme Court once noted, in overturning a different forgery conviction: " 'whatever [a defendant's] misdeeds, he must not suffer for a crime which he has not committed.' " (*People* v. *Bendit* (1896) 111 Cal. 274, 280 [43 P. 901], citations omitted.)

### Facts and Procedural Background

Defendant John Lewis is charged by indictment with one count of forgery in violation of section 470. The indictment alleges that defendant "with the intent to defraud cause[d] to be counterfeited and forged the handwriting of another, to wit, PRESIDENT RONALD REAGAN and, further [caused to be passed], as true and genuine letters on behalf of certain candidates for the state Assembly which letters bore the counterfeit and forged signature and purported to be from PRESIDENT RONALD REAGAN, with the intent to prejudice, damage or defraud the voters in the various districts from which the candidates were seeking election." Though but one offense is alleged, two acts relating to the letters are made the predicate of criminal liability. The first is the "forging" of a signature to the letters. The second is their passing.

We note the pertinent standard of review. ▇ In ruling on a motion to dismiss an indictment, the court is bound by the grand jury's judgment as to the weight of the evidence. (*Lorenson* v. *Superior Court* (1950) 35 Cal.2d 49, 55 [216 P.2d 859]; *Greenberg* v. *Superior Court* (1942) 19 Cal.2d 319, 321 [121 P.2d 713].) Hence, we set forth the evidence in the light most favorable to the People. However, when there is an absence of any evidence as to an essential element of the charged offense, the indictment must be set aside. (*Garabedian* v. *Superior Court* (1963) 59 Cal.2d 124, 127 [28 Cal.Rptr. 318, 378 P.2d 590]; *People* v. *Olf* (1961) 195 Cal.App.2d 97, 109-110 [15 Cal.Rptr. 390].) The question presented requires but a brief synopsis of the evidence presented to the grand jury.

Defendant is a member of the California Assembly. He directed members of his own staff, and other political consultants working for the Republican Party under his supervision, to draft six letters supporting fellow Republican candidates for state legislative office. The letters were mailed to registered voters in the "target" districts. They were printed on stationery bearing the letterhead "Ronald Reagan—The White House," and appeared to be signed by the former President. In fact, President Reagan did not sign the letters, nor did he authorize the use of his signature by facsimile or

otherwise. Rather, the false signature was affixed to the letters, and the letters mailed, upon defendant's orders, even after he was advised that permission to use the President's name and signature on those communications had been sought and denied.

The letters were mailed as part of the Republican Party's campaign effort in the 1986 general election. While there are slight variations in wording, each of the six versions purports to be an expression of President Reagan's support for the Republican candidate in the recipient's legislative district and includes a plea that the voter cast his ballot for that candidate.

Defendant moved under section 995 for an order setting aside the indictment. He argued that the letters are not instruments upon which a violation of section 470 could be founded, relying upon *People* v. *Wong Sam, supra,* 117 Cal. 29. The superior court denied the motion, concluding that the letters in question are documents that are subject to the forgery statutes. This writ proceeding promptly ensued.

*Discussion*

I

Section 470 in pertinent part reads: "Every person who, [1] with intent to defraud, signs the name of another person, or a fictitious person, knowing that he or she has no authority so to do, to, or falsely makes, alters, forges, or counterfeits, any [of a list of more than 40 kinds of named documents concerning interests in tangible and intangible property][2]; [2] or counterfeits or forges the seal or handwriting of another; [3] or utters, publishes, passes,

---

[2]The documents presently specified in section 470 are: "charter, letters patent, deed, lease, indenture, writing obligatory, will, testament, codicil, bond, covenant, bank bill or note, post note, check, draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for money or property, passage ticket, lottery ticket or share purporting to be issued under the California State Lottery Act of 1984, trading stamp, power of attorney, certificate of ownership or other document evidencing ownership of a vehicle or undocumented vessel, or any certificate of any share, right, or interest in the stock of any corporation or association, or any controller's warrant for the payment of money at the treasury, county order or warrant, or request for the payment of money, or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing, or acquittance, release, or receipt for money or goods, or any acquittance, release, or discharge of any debt, account, suit, action, demand, or other thing, real or personal, or any transfer or assurance of money, certificate of shares of stock, goods, chattels, or other property whatever, or any letter of attorney, or other power to receive money, or to receive or transfer certificates of shares of stock or annuities, or to let, lease, dispose of, alien, or convey any goods, chattels, lands, or tenements, or other estate, real or personal, or any acceptance or endorsement of any bill of exchange, promissory note, draft, order, or any assignment of any bond, writing obligatory, promissory note, or other contract for money or other property . . . ."

or attempts to pass, as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person; [4] or who, with intent to defraud, alters, corrupts, or falsifies any record of any will, codicil, conveyance, or other instrument, the record of which is by law evidence, or any record of any judgment of a court or the return of any officer to any process of any court, is guilty of forgery."

As indicated by its semicolons and our parenthetical numbering of the text, section 470 has four branches. The first branch pertains to acts regarding a list of named instruments. Here, there is no claim that the campaign letters are any of the named instruments. The fourth branch of the statute also is not pertinent since there is no claim that the campaign letters are an "instrument, the record of which is by law evidence . . . ." Hence, the conduct charged as forgery, to come within the statute, must constitute either [2] the "counterfeit[ing] or forg[ing] of . . . handwriting of another; or [3] . . . [passing] as true and genuine, any of the above-named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person . . . ."

 This language, almost all of which was taken from section 73 of the Crimes and Punishments Act of 1850 (Stats. 1850, ch. 99, § 73, p. 237),[3] was incorporated in section 470 of the Penal Code in 1872 and has

---

[3] The text of the 1850 provision, which appears to have been borrowed intact from section 73 of the Criminal Jurisprudence Act of Illinois (Compare Rev. Stats. Ill. (1845) ch. 30, p. 163), reads: "Every person who shall falsely make, alter, forge, or counterfeit any [of a list of named instruments], or shall counterfeit or forge the seal or handwriting of another, with intent to damage and defraud any person . . ., or shall utter, publish, pass, or attempt to pass, as true and genuine, any of the above named false, altered, forged, or counterfeited matters, as above specified and described, knowing the same to be false, altered, forged, or counterfeited, with intent to prejudice, damage, or defraud any person . . . shall be deemed guilty of forgery . . . ."

The substantive changes made to the 1850 law are (1) the addition of several kinds of documents to the list of instruments and (2) the deletion of "damage and" from "intent to damage and defraud." In the 1850 law this latter provision modified the making of the specified instruments, including the forged "seal or handwriting of another." The language governing the passing of forged or counterfeited documents, branch three as we have labeled it, was exactly reproduced in the 1872 statute.

With these exceptions, the remaining changes in 1872 were to the order of presentation of the provisions and the use of semicolons as punctuation. If these changes were given undue emphasis, one might conclude that the scienter requirement was deleted from the second branch "seal or handwriting of another." That reading is not persuasive for at least two reasons. First, the code commissioners' notes to the 1872 revision reveal no such purpose. "The definition has been extended to cover cases not included within the definition given by our statutes (Stats. 1850, p. 229), but which are of equal enormity." (Pen. Code of Cal. (1st ed. 1872) Haymond & Burch, comrs.—annotators) p. 181.) The reference to cases of "equal

remained essentially unaltered since that time. This section, like many of the early codes, derives from the common law and has been read by the controlling cases as incorporating significant provisions of the common law.

■ "It will be presumed . . . that in enacting a statute the Legislature was familiar with the relevant rules of the common law, and, when it couches its enactment in common law language, that its intent was to continue those rules in statutory form. (*Baker* v. *Baker* (1859) 13 Cal. 87, 95-96; *Morris* v. *Oney* (1963) 217 Cal.App.2d 864, 870 [32 Cal.Rptr. 88].) This is particularly appropriate in considering the work of the first session of our Legislature [from which section 470 takes its language and hence its meaning; see § 5]: its precedents were necessarily drawn from the common law, as modified in certain respects by the Constitution and by legislation of our sister states." (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 625 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420], fn. omitted.) For this reason, among others, the Penal Code provided at the outset, as now, that "Words and phrases . . . as may have acquired a peculiar and appropriate meaning in law, must be construed according to such peculiar and appropriate meaning." (§ 7, subd. 16.)

■ The words of section 470 bear a "peculiar and appropriate meaning" taken from the common law. As was said in 1896, "[A]s to what constitutes forgery of instruments which are subjects of forgery, the definitions at common law and by our code are the same. 'Forgery, at common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.'" (*People* v. *Bendit, supra*, 111 Cal. at p. 280.) That is evident in section 470 by the detailed attention which is shown in the listing of instruments which may be made the subjects of forgery.

The common law rule of forgery began as a species of treason, including such acts as falsifying the king's seal *and* counterfeiting money. (See Turner, *"Documents" in the Law of Forgery* (1946) 32 Va. L.Rev. 939, 941-943; hereafter *Documents*.) Over time, case law broadened the offense to extend to fabrication and use of false documents as the means of accomplishing theft by false pretenses. The comment to Model Penal Code section 224.1 suggests that forgery developed as an offense independent of theft by false

---

enormity" cannot be read to include cases in which the signing of the signature of another was not done for any wrongful purpose. Second, no case has made anything of the grammatical rearrangement. Rather a scienter requirement has been read into branch two, as we discuss in the text, as if the "intent to defraud" appended to branch one modified branch two, as it did in the 1850 statute. Indeed, that is how the People read it as charged in the indictment.

pretenses most importantly because of the narrowness of the law of attempt. (See 111 Cal. at pp. 283-284.) The offense is maintained as a distinct, felony offense from theft by false pretenses because forgery threatens the system of written instruments upon which modern commerce critically depends. (Model Pen. Code & Commentaries, com. 2 to § 224.1, p. 284; also see *People* v. *Bendit, supra*, 111 Cal. at p. 281 ["A very large part of the business of civilized countries is done by means of negotiable instruments. . . . [I]f there were many successful forgeries there would be the utmost confusion in business circles. Consequently forgery [in contradistinction to false pretenses], is made a felony."].)

The broadening of the offense is explained in the comment to section 224.1 of the Model Penal Code. "It is easy to understand how the original legislative concern for royal seals, money, and official documents was transferred to negotiable instruments and muniments of title as society became increasingly commercial. The pragmatic need in both classes of cases is a guarantee of authenticity of instruments and records upon which the community can rely in important transactions. This is the case with deeds and wills, which constitute links in the chain of devolution of title and which are usually entered of public record as notice to all. This is also true with instruments that pass from hand to hand in the manner of money—*e.g.*, *checks, notes, bills of lading, stocks, bonds*, and other securities. It is a natural extension of this notion to include contracts, releases, authorizations, and other documents that purport to have legal effect." (Model Pen. Code & Commentaries, *supra*, at p. 283.)

In this context the common law rule concerning the apparent legal efficacy of the instrument is tailored to the harm that the common law offense addresses. The rule identifies the kinds of writings that are suited to occasion such harm. Making virtually any kind of false document affords an inference that the maker intends to deceive someone. However, only a document with apparent legal efficacy is naturally suited to perpetrate the kind of deception that is strictly speaking a defrauding. Fabricating such a document by that very act affords an inference of an intention to "defraud," namely by such deceit to detrimentally accomplish something akin to a theft by false pretenses.

Without some reference to the common law, the generalized provisions of the second branch of section 470, upon which the indictment is in part founded, would be perilously broad. The terse declaration that forgery is the counterfeiting or forging of the handwriting of another could extend to any imitation of another's handwriting for purposes of deception, whatever the harmlessness or triviality of the end in view, i.e., regardless of an intention to defraud. However, "The common law meaning of a statutory term is . . .

a proper basis for defeating a claim of fatal uncertainty. (*In re Newbern* (1960) 53 Cal.2d 786, 792 [ ] and cases cited.)" (*Keeler, supra*, 2 Cal.3d at p. 625, fn 3.) No doubt for this reason, among others, it is has long been settled that, notwithstanding the absence of an explicit scienter provision, an intent to defraud is to be implied from and must be pled and proved under this branch of section 470. (See, e.g., *Ex parte Finley* (1884) 66 Cal. 262 [5 P. 222]; *People v. Turner* (1896) 113 Cal. 278, 281 [45 P. 331]; also cf., e.g., *People v. Mitchell* (1891) 92 Cal. 590, 591-592 [28 P. 597, 28 P. 788].)

In *People v. Mitchell, supra*, the scienter requirement was located in the term "forge." "The words 'forge, forger, and forgery,' when used in law, have no honest meaning, but imply fraudulent deceit . . . ." (92 Cal. at p. 592.) The requirement of intent to defraud under the second branch of section 470 is implicitly recognized by the People for the indictment alleges a violation of that branch in alleging that defendant "with *the intent to defraud* caused[d] to be counterfeited and forged the handwriting of another . . . ." (Italics added.)

## II

Defendant contends that under any branch of section 470 the crime of forgery requires an intent to defraud and that the campaign letters are simply not instruments of a type capable of "defrauding" as that term is used in the law of forgery. He rests his argument most heavily upon the Supreme Court's decision in *People v. Wong Sam, supra*, 117 Cal. 29. This decision is properly relied upon as it provides a paradigm of compelling significance for this case.

## A.

Wong Sam was charged by information with "writing *and* sending to John H. Wise, as United States collector of customs at the port of San Francisco, a false and fraudulent letter which purported to be written and signed by a Los Angeles court interpreter. The purpose of the letter was to " 'influence the judgment of said collector adversely' " to the request of a citizen of China, Lu Goon, for permission to land at San Francisco. The Supreme Court upheld the trial court's order sustaining a demurrer to the charge that the making *and* sending of the letter was a forgery in violation of section 470. (*People v. Wong Sam, supra*, 117 Cal. at p. 30.) The decision holds that "the paper is not one of which forgery may be competently predicated. The letter purports to be nothing more than an assault upon the veracity, reputation and business standing of the person against whom it was aimed; and, while it might constitute the basis of a prosecution for

criminal libel, it is not an instrument which, upon its face, could have the effect to *defraud* within the meaning of section 470 of our Penal Code . . . ." (*Ibid.*, original italics.)

Of significance here, the letter in *Wong Sam* was not one of those instruments specified in the first or fourth branches of section 470. Its fabrication must have fallen, if at all, under the second branch and its sending under the third branch. The decision in *Wong Sam,* although it does not identify the statutory language pertinent to the charge, necessarily addresses these requirements. Since neither the fabrication of the writing nor its sending to the collector of customs constituted a forgery, it must be concluded that a defrauding is a necessary element of both the second and third branches of the charged offense.

The reasoning underlying the holding in *Wong Sam* is amplified in the precedents upon which it relies. The first of these, *People* v. *Munroe* (1893) 100 Cal. 664 [35 P. 326], affirmed an appeal from a forgery conviction. The case also arose on demurrer. The writing in issue purported to be an assignment of the salary of a school teacher. The information alleged that the writing was used to defraud one J. W. Jackson, and the evidence disclosed that it was assigned to Jackson for a valuable consideration. "The information charged that this writing was forged *and* passed by the defendant with intent to defraud one J. W. Jackson, the evidence disclosing that the writing was assigned to Jackson for a valuable consideration, and that subsequently the warrant was delivered to him by the auditor, and the money paid thereon by the treasurer." (*Id.* at p. 665, italics added.) The harm sought by the fabrication was manifestly a loss, damage, or prejudice of a pecuniary or property right.

The defendant in *Munroe* contended that the assignment could not have been enforced against the teacher because an "assignment of an unearned salary by a public officer is void, being against public policy . . . ." (100 Cal. at p. 665.) The Supreme Court accepted this premise for the sake of argument but rejected the view that the forged instrument, if genuine, must be wholly sufficient to form the basis of legal liability against every sort of technical legal defense. (*Id.* at p. 666.) Rather it held that the ends of the forgery statute are served if the instrument has apparent value that might occasion a defrauding, regardless that a possible technical legal defect might preclude a judicial civil remedy. (See also *People* v. *McKenna* (1938) 11 Cal.2d 327, 332-333 [79 P.2d 1065]; *People* v. *Gayle* (1927) 202 Cal. 159 [259 P. 750].) The opinion notes that if the writing were genuine and the money were paid out by the proper officer the school teacher would have been estopped to recover the money despite the invalidity of the assignment;

hence, "the instrument was of such value to make it the foundation of a charge of forgery." (*Munroe, supra,* 100 Cal. at p. 672.)

While rejecting the view that the subject matter of forgery under section 470 only pertains to fully enforceable contracts, *Munroe* endorses the notion that writings that are in no way recognized as giving rise to a legal duty of performance (compare Rest.2d Contracts, §§ 7-8) are beyond the reach of the statute. "There is no question but that a writing which is a *nudum pactum* is not the subject of forgery . . . ." (*Munroe,* 100 Cal. at p. 667.) ■ That phrase means "A voluntary promise, without any other consideration than mere goodwill, or natural affection." (Black's Law Dict. (5th ed. 1979) p. 961.)

The remaining, out-of-state cases relied upon in *Wong Sam* provide further examples which delineate the line between the kinds of writings that are and are not the subject of forgery. The first of these is *Foulkes* v. *The Commonwealth* (1843) 41 Va. 836. In that case a forgery conviction was reversed on the ground that a false signed letter recommending the defendant as a creditworthy gentleman "is [a writing] of which forgery could not be committed, either at common law or under the statute." (*Id.* at p. 842.)

In *Jackson* v. *Weisiger* (1841) 41 Ky. 214, a slander action, the court had occasion to comment upon the law of forgery. The plaintiff had prepared a forged letter purporting to be signed by another recommending him as an eminent physician. The letter contained the false assertion that the authors would have been happy to take him on as a partner. The court said: "Interpreting the letter on its face, unaffected by any intrinsic fact, it neither imports a transfer or extinguishment of any right, or an obligation for money or other thing, nor purports to have been even designed as evidence of a partnership, to be used for the fraudulent purpose of depriving [the purported authors] of their property. The letter purports to have been written for the purpose of repelling imputations injurious to [plaintiff], and of commending him to the favorable consideration of [the addressee]; and, as before intimated, it alludes to a subsisting partnership, apparently for the purpose of illustrating the good opinion thus expressed of his merits. [¶] The fabrication of such a letter, for such a purpose, though very discreditable, would not have been a technical forgery or other criminal offence [*sic*] punishable by either the common or statute law of Kentucky." (*Id.* at p. 215.)

The last case cited in *Wong Sam* is *Shannon* v. *State* (1887) 109 Ind. 407 [10 N.E. 87]. The defendant was alleged to have passed a false order for the delivery of a dress pattern. The writing said: " 'Mr. T. Hemphill: Please let [defendant] have one dress pattern, and oblige, Theodore Points.' " (*Ibid.*)

The Supreme Court of Indiana noted that the writing was not included in those explicitly listed in the forgery statute. "But the law is that forgery may be committed of any instrument of writing which, if genuine, would or might operate as the foundation of another man's liability, or the evidence of his right." (*Id.* at p. 409 [10 N.E. at p. 88].) Nonetheless, it directed that the indictment be quashed on the ground that the writing alone without allegations of additional facts was too uncertain to meet the foregoing definition. (*Id.* at p. 410 [10 N.E. at p. 89].)

*Wong Sam* and its precedents derive from the common law of forgery. That law was set forth in *People* v. *Bendit, supra*, 111 Cal. at p. 280: " 'Forgery, at common law, is the false making or materially altering, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy, or the foundation of a legal liability.' [Citation omitted]." This common law rule has often been codified in statutes defining the offense of forgery. (See Annot., Invalid Instrument as Subject of Forgery (1948) 174 A.L.R. 1300, 1304.)

Our research has turned up only one forgery case, *Barnes* v. *Crawford* (1894) 115 N.C. 76 [20 S.E. 386], which approaches the kind of misrepresentation of political sentiments at issue here. The question was whether the forging of a declaration of support for supposed legislation purporting to be signed by a candidate for Congress was a criminal forgery. The case holds that the writing is not one of which forgery could be predicated. (*Id.* at pp. 78-79.) "[I]t is not alone sufficient that there be a writing, and that the writing be false: it must also be such as, if true, would be of some legal efficacy, real or apparent, since otherwise it has *no legal tendency to defraud.*" (*Id.* at p. 79, citation omitted, original italics.) This is the core notion that underlies *Wong Sam.*

## B.

The People contend that *Wong Sam* is inapposite. It should be distinguished on its facts they suggest because the person to whom the false letter was sent, the customs collector, was not the person who was to be defrauded. They read *Wong Sam* as based on the theory that a pleading does not allege forgery in asserting that the defendant gave a false signed document to a second party with the intent to defraud a third party unless facts are alleged showing that the second party acted on the forged document. The argument is untenable for two reasons.

The first is that the reasoning in *Wong Sam*, as we have explained, has nothing to do with the proffered basis of distinction. The unmistakable basis of the holding is that regardless of action or inaction by the customs official

the effect of the letter would not be to "*defraud*" within the meaning of section 470. The second reason is that it had always been the law that it is immaterial whether the putative forger succeeds in the scheme to defraud. The offense, if any, is complete with the fabrication of the document with the intent to defraud. (See, e.g., *People* v. *Turner, supra,* 113 Cal. at p. 281.) There is no reason to suppose that *Wong Sam* is based upon an unprecedented and unarticulated premise that alleging success in defrauding is required if the forged document is to be used against someone other than the person to whom it is uttered, published, and passed.

In *Wong Sam* the letter on its face could not have the effect to "defraud" in the sense contemplated by the common law. Because it was intended to influence the judgment of the customs official in deciding whether to allow disembarkation of an alien, it could not have had the effect to "*defraud*" Lu Goon because he had no legal right to disembarkation. Certainly, denial of disembarkation could not injure him with respect to a right that is pecuniary or in the nature of a property interest.

*Wong Sam* and its antecedents and progeny adopt a "peculiar and appropriate meaning" of the common law of forgery. This meaning is expressly noted in *People* v. *Chadwick* (1904) 143 Cal. 116 [76 P. 884]. The defendant had been charged with a violation of section 474.[4] He sent a false telegram to a woman, purporting to be from her mother, with the intent to deceive the daughter into thinking that the mother had withdrawn her objections to marriage to him, and so to induce the daughter to marry him. (*Id.* at p. 120.) Defendant argued that this conduct was outside the scope of section 474. The Supreme Court, having earlier noted that section 474 "inserts the phrase 'with the intent to *deceive*'—words not found in [section 470]" (*Id.* at p. 119, original italics), answered saying: "In all of this appellant argues for the meaning of deceit as being synonymous with the meaning of defraud in [section 470]—an act whereby one does, or may, suffer financial loss. But deceit in the law has a broader significance." (*Id.* at p. 121.) Under the broader term "deceit," it is sufficient to show that the victim was induced to change her "domestic or social *status*." (*Ibid.,* original italics.)

The People assert that *Chadwick* "merely refer[s] to the more common application of section 470 to fraud which involves financial loss; [it does] *not* limit section 470 to schemes where financial loss was intended." (Original italics.) We cannot square this view of *Chadwick* with its reasoning. While the opinion is not a holding on the point at issue, since it pertains to section

---

[4] Section 474, enacted at the same time as section 470, in pertinent part is as follows. "Every person who [participates in sending or delivering a false or forged telegraph or telephone message] with the intent to deceive, injure, or defraud another, is punishable by imprisonment [or fine or both.]"

474, it is unmistakably an authority for the view that "defraud" in the common law of forgery, upon which section 470 rests, had acquired a "peculiar and appropriate meaning" (§ 7, subd. 16), to wit: to injure someone in their pecuniary or property rights. In so doing it points out the absence of the term "deceive" in section 470, enacted contemporaneously with section 474, and assigns a plausible explanation for the differing language in the two related provisions.

### C.

Similar reasoning was employed by the United States Supreme Court in construing the meaning of "defraud" in the federal mail fraud statute in *McNally* v. *United States* (1987) 483 U.S. 350 [97 L.Ed.2d 292, 107 S.Ct. 2875]. At issue was whether state officials involved in a corrupt scheme designed to obtain state worker's compensation insurance contracts for a carrier in return for a "kick-back" from the premiums paid with public funds to another agency, in which the officials owned an interest, could be prosecuted under 18 United States Code section 1341. That statute, originally enacted like section 470 in 1872, prohibited use of the mails "to defraud" or "for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . ."

In reversing the defendants' convictions, the Supreme Court rejected a line of federal courts of appeals decisions "holding that the mail fraud statute proscribes schemes to defraud citizens of their intangible rights to honest and impartial government." (483 U.S. at p. 355 [97 L.Ed.2d at p. 299].) It explained that the phrase "any scheme or artifice to defraud" used in the mail fraud statute had been construed at the outset "broadly insofar as property rights are concerned" but without any suggestion "that the statute had a more extensive reach." (*Id.* at p. 356 [97 L.Ed.2d at p. 300].) It noted the contemporary understanding of the term "to defraud" as a reference " 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signif[ies] the deprivation of something of value by trick, deceit, chicane or overreaching.' " (*Id.* at p. 358 [97 L.Ed.2d at p. 301].) The Supreme Court quoted the following passage from *Curley* v. *United States* (1st Cir. 1904) 130 Fed. 1, 6-7: " 'Quite likely the word "defraud," as ordinarily used in the common law, and as used in English statutes and in the statutes of our states, enacted with the object of protecting property and property rights of communities and individuals, as well as of municipal governments, which exist largely for the purpose of administering local financial affairs, has reference to frauds relating to money and property.' " (*McNally, supra,* 483 U.S. at p. 359, fn. 8 [97 L.Ed.2d at p. 301].)

The Supreme Court's repudiation in *McNally* of the notion that the citizenry may be "defrauded" of its general but intangible right to honesty in government is significant here.[5] Defendant is, if the testimony presented to the grand jury is true, guilty of misconduct which impinges on the public's interest in the integrity of its governmental institutions. However, there is no suggestion of fraud relating to money or property. No funds were solicited by the letters, nor was there any invasion of a *legal* right. Thus with respect to the meaning of "defraud," *McNally* is of a piece with *Wong Sam* and the California law.

### D.

The People also contend that the language of section 470, at issue in *Wong Sam*, was amended in 1905 to cut the common law ground from beneath it. At the time of *Wong Sam* section 470 began: "Every person who, with intent to defraud another, falsely makes . . . ." The 1905 amendment revised this to read: "Every person who, with intent to defraud, signs the name of another person, or of a fictitious person, knowing that he has no authority so to do, to, . . . ." (Stats. 1905, ch. 515, § 1, p. 673.) The People advance the theory that the deletion of the word "another" after the phrase "intent to defraud" implies a legislative disapproval of *Wong Sam*.

This theory has three flaws, any one of which suffices to compel its rejection. First, the theory rests on the premise we have rejected, that *Wong Sam* turns upon the consideration that the addressee of the letter was not the person who was to be defrauded. Since the premise is untenable so is the theory upon which it is based. The theory also is flawed because the part of the amendment upon which the People rely is to language in the first branch of section 470, a branch not implicated either in *Wong Sam* or here. Lastly, as we next show, the text of the amendment to which the People point is easily accounted for without implicating *Wong Sam*.

The 1905 amendment was part of a large scale revision of the codes, including the Penal Code, that was launched in 1895 with the establishment of the body of "Commissioners for the Revision and Reform of the Law" (Commissioners). (Stats. 1895, ch. 222, p. 345.) The Commissioners were charged with the duty to "revise and examine . . . the Penal Code" and to

---

[5]The People suggest that *McNally* has been "overruled" by a subsequent amendment of the federal mail fraud statute. We shall assume for the sake of argument that the Congress has amended the statute to extend to frauds beyond those relating to money and property. Such an amendment does not "overrule" *McNally,* since a legislature does not possess the judicial power. (See *Sharpe* v. *Superior Court* (1983) 143 Cal.App.3d 469, 474-475 [192 Cal.Rptr. 16].) While the Congress is free to enact a broader definition of "defraud" as a law for the future, the meaning of the mail fraud statute as enacted in 1872 and amended in 1909 as declared in *McNally* is not a subject within the province of the legislative power. (See *Ibid.*)

"note and designate the errors, defects, or omissions, verbal, grammatical, or otherwise, and suggest what will be necessary to supply, correct, or amend the same, and such improvements as shall introduce precision and clearness into the wording of the codes and statutes." (*Id.* at p. 346.)

■ The only substantive impact on the scope of section 470 of the amendment noted by the Commissioners is the expansion of the acts covered to include falsifying the signature of a fictitious person. (See Stats. 1905, p. 1135.) At common law at one time it was not forgery to sign the name of a fictitious person to an instrument. (*People* v. *Elliott* (1891) 90 Cal. 586, 589 [27 P. 433].) It was questionable whether such conduct was included within section 470 and rejection of that conduct was a recurrent ground of reversal of convictions for forging of checks by means of fictitious signatures. It was said that such cases should have been pursued under section 476. (See *ibid.*; Annot., Forgery: Use of Fictitious or Assumed Name (1956) 49 A.L.R.2d 852, 869-871, and California cases cited therein.)

The 1905 amendment was aimed at remedying this condition.[6] The notes of the Commissioners regarding the amendment state: "The purpose of the amendment is to make the forging of the name of a fictitious person, or knowingly signing the name of another, criminal if done *with intent to defraud.*" (Stats. 1905, p. 1135, italics added.) With the insertion of the language needed to accomplish this end, the retention of the word "another" in its original position would have rendered the text confusing, as follows: "Every person who, with intent to defraud [another], signs the name of another person, or of a fictitious person . . . ." A concern for grammatical clarity entirely accounts for the deletion of "another" from the earlier text.

E.

The People next contend that an intent to defraud is not required to obtain a conviction for uttering, as opposed to making, a forged document. They rely on the wording of the third branch of section 470 that anyone who utters, publishes, passes, or attempts to pass a matter previously named in the statute ". . . with intent to prejudice, damage, or defraud any person . . . ." is guilty of forgery. The words "prejudice" and "damage" are, it is

---

[6]The People note that *People* v. *Parker* (1970) 11 Cal.App.3d 500, 511-512 [89 Cal.Rptr. 815] states that the amendment effected one other change in the scope of section 470. A person who signs as the agent of another *"knowing that he has no authority so to do"* may be guilty of forgery even though he signs his own name. (*Ibid.*, original italics.) In *Parker* the documents at issue were checks, a matter named in branch one of section 470, the negotiation of which results in obtaining money or property. There is nothing in *Parker* which supports the view that the 1905 amendment in any way altered the kind of instruments which are the subject of section 470 or the kind of harm that constitutes a defrauding under the statute.

argued, expressions of a different kind of intent, and eliminate the need to show a purpose to defraud in a prosecution for uttering. As appears, there is no principled basis on which to apply the words "prejudice" or "damage" more broadly than "defraud."

The People point to no case that has suggested that the third branch of section 470 contains a broader or different scienter requirement than that contained in its other branches. ■ To the contrary, the scienter requirement is uniformly viewed as the same for all branches of the statute. "The crime of forgery consists either in the false making or alteration of a document without authority or the uttering (making use) of such a document with the intent to defraud." (*People* v. *McKenna, supra*, 11 Cal.2d at p. 332; also see *People* v. *Gayle, supra*, 202 Cal. at p. 162; *Century Bank* v. *St. Paul Fire & Marine Ins. Co.* (1971) 4 Cal.3d 319, 322 [93 Cal.Rptr. 569, 482 P.2d 193].) Nor would it make sense so to read the statute. The third branch of the statute only applies to matters named in the preceding branches, i.e., to the making of specified kinds of instruments with an intent to defraud. The People's theory would have the consequence in this case that the making of the false signature, appended to the campaign letters with an intent to use them to motivate voters, would not be a violation of section 470, but sending them to the voters for the very same purpose would be a violation. That construction misperceives the harm to which the forgery law is directed, the deprivation of a right at law. The case law has always unqualifiedly asserted, without distinction between the making and the sending of a false document, that a violation of section 470 requires an intention to defraud. (In addition to the cases cited above see, e.g., *People* v. *Reisdorff* (1971) 17 Cal.App.3d 675, 678 [95 Cal.Rptr. 224]; *People* v. *Luizzi* (1960) 187 Cal.App.2d 639, 645, 647 [9 Cal.Rptr. 842].)

The People uncritically suggest that the meaning of the terms "damage" and "prejudice" is to be found by resort to unqualified dictionary definitions. However, as we have been at pains to show, that has not been the manner of ascertaining the meaning of the companion term "defraud," when employed in the context of a law of forgery. It is true that the term "defraud" has broad uses, dependent upon the context of its employment, and could apply, outside the law of forgery, to deceit pertaining to matters beyond money, property rights, or even legal rights generally.

Although we endeavor to give effect to every word in a statute, sometimes terms used together are simply synonymous. That is the case with the words "utter" and "publish" in section 470. (*People* v. *Tomlinson* (1868) 35 Cal. 503, 509.) In the common law of forgery the word "prejudice" appears to be used as synonymous with "defraud." For example, Blackstone defines forgery at common law to be "the fraudulent making or alteration of a writing

to the prejudice of another man's right." (4 Blackstone's Commentaries 247; also see *Documents, supra*, 32 Va. L.Rev. at pp. 944-947.) There is no reason to suppose that the inclusion of that word in section 470 broadens the ambit of the offense beyond that at common law.

"Damage" and "defraud" have also been used interchangeably in this context. "In a prosecution for forgery it is not required that actual damage ensue; it is sufficient to show, as was done in the case at bar, that the instrument was prepared with the intent to deceive and defraud another." (*People* v. *West* (1939) 34 Cal.App.2d 55, 60 [93 P.2d 153].)

The words "prejudice" and "damage" can be given significance not clearly supplied by "defraud" without extending the subject matter of forgery beyond its common law antecedents. "Intent to defraud" can be read such that the end in view is that the perpetrator obtain the money or property right of which the victim is defrauded. "When the word 'defraud' is used, it necessarily implies that advantage comes to the party defrauding, and corresponding damage to the party defrauded . . . ." (*United States* v. *Lee* (N.D. N.Y. 1882) 12 Fed. 816, 819; also see, e.g., *People* v. *Holtzman* (1916) 272 Ill. 447, 480 [112 N.E. 370, 371], "Defraud, within the meaning of . . . [a false representation] statute, means to deprive one of a property right by deception.") The addition of "prejudice" and "damage" to "defraud" under the third branch of section 470 includes schemes of which a consequence is the destruction of or imperilment of a right which is the subject of protection under the forgery statute, even if the property is not obtained by the forger and the right does not accrue to him. Hence, the addition of these words to "defraud" does not impel the view that the subject of the offense of forgery is meant to be broadened to include any kind of harm that might occur from deceptive uses of false documents.

Indeed, the question is not so much one of explaining the presence of the words in the third branch of section 470 as accounting for their absence from the other branches. In our view, that absence is not significant. The harm that is addressed by the forgery offense is the same under all of the branches of the section.

### F.

In any event, it is too late in the day to urge a novel construction of section 470. As we have shown, the California Supreme Court has consistently stated that the statutory offense, whether it be of making or sending of a fabricated instrument, requires an intention to defraud. (See e.g., *People* v. *McKenna, supra*, 11 Cal.2d at p. 332.) More importantly, the controlling case law plainly indicates that only schemes to prejudice, damage or de-

fraud persons as to their legal rights, generally money or property, are within the ambit of section 470. If a broader scienter is to become the measure of the crime then notice of that shift must be afforded by the enactment of an appropriate statute.

The People note that an eminent criminal law treatise, Perkins and Boyce, Criminal Law (3d ed. 1982) section 8, page 417, footnote 25, asserts (without explanation) that *Wong Sam* would be decided differently today than in 1896. ▉ However, there are no common law crimes in California. (§ 6.) "This section embodies a fundamental principle of our tripartite form of government, i.e., that subject to the constitutional prohibition against cruel and unusual punishment, the power to define crimes and fix penalties is vested exclusively in the legislative branch." (*Keeler* v. *Superior Court, supra*, 2 Cal.3d at p. 631.) It would be a manifest exercise of the forbidden power for the judiciary to expand the Penal Code by creating a novel meaning which extends the statute to cases outside the ambit of the applications fixed by its common law history. (*Id.* at pp. 631-633.)

G.

Lastly, the People seek refuge in several later decisions from the courts of appeals which, it is claimed, are evidence that a "narrow" construction of section 470 adopted by the Supreme Court in *Wong Sam* has been abandoned. The argument is defective in several respects.

First, the holdings of these cases do not support this conclusion. Second, there is nothing in them to show they considered *Wong Sam* and found principled reasons for departing from it. The argument rests ultimately on the misconception that *Wong Sam* is an anomaly, and not part of a consistent and well-founded view, derived from the common law.

*In re Parker* (1943) 57 Cal.App.2d 388 [89 Cal.Rptr. 815] was a habeas corpus action in which the defendant collaterally attacked a conviction for forgery. The defendant was charged with forging affidavits of birth with the intent to "cheat and defraud" a corporation and an individual. (*Id.* at pp. 390-391.) Given the narrow standard of review of criminal pleadings on habeas corpus (*id.* at p. 389), the sole issue considered by the court was whether the information stated " 'an offense of a kind of which the court assuming to proceed has jurisdiction' . . . ." (*Id.* at p. 390.) It held that the allegations, in the language of the statute, were sufficient, and that it could

not hold as a matter of law that the forged affidavits were incapable of defrauding. (*Id*. at pp. 391-392.)[7]

The People next point to language in *People* v. *Russel* (1963) 214 Cal.App.2d 445 [29 Cal.Rptr. 562]. In *Russel* the appellant was convicted of violating section 470 on the basis of his having obtained the college transcripts of another person by forging that person's signature on a request for the records and a receipt. (*Id*. at pp. 450-451.) On appeal, it was argued that the documents were not the subject of forgery. In rejecting this claim, the court stated: "If we follow the path of our own courts, the intent to defraud is well made out. In a limited sense, there is an intent to defraud the college of the transcript, for the college would not otherwise give it up to the forger. In a wider sense, the forger is violating the college rules that restrict the circulation of such transcripts. It is well settled that the fraud involved may be against the public. (Wharton's Criminal Law (12th ed.) Ruppenthal, § 708.) In *French* v. *United States,* 232 F.2d 736, 739, it was held that drawing a false name on a prescription tends to defraud the government, in that it frustrates the administration of the narcotic laws. Similarly, the fraud here injures the public because it has been determined that the best interests of society are served by not opening to the general public the grades achieved by individuals. *People* v. *Wong Sam,* 117 Cal.29 [48 P. 972], relied upon by defendant, is factually distinguishable. The request and receipt do have legal significance and do have the possibilities of working some fraud." (*People* v. *Russel, supra,* 214 Cal.App.2d at p. 452.)

The only case which *Russel* cites for the expansive view that any detriment to the interests of the public is a defrauding is *French* v. *United States* (5th Cir. 1956) 232 F.2d 736. That case concerns a federal statute, 18 United States Code section 495, aimed solely at protecting the federal government. The use of "intent to defraud" in such a statute does not partake of the limiting common law definition of "defraud." (*McNally* v. *United States, supra,* 483 U.S. 350 at p. 357, fn. 8 [97 L.Ed.2d at pp. 301-302].) Hence *French* v. *United States* has no application to a general forgery statute, such as section 470, derived from the common law. ■■■ Under a general forgery statute it has been held that the forging of a prescription is

---

[7]The *Parker* court did speculate, after the fact, about possible uses to which the documents might be applied that could count as defrauding. It noted that defense work required proof of citizenship and suggested that obtaining such work by means of a false affidavit of birth could defraud a defense contractor. However, the suggestion is a bare conclusion and makes no reference to the question whether deception for purposes of obtaining something other than money or property would defraud within the meaning of the law of forgery. In view of the restricted standard of review and the absence of consideration of the question whether obtaining a job might implicate some monetary or property right in the circumstances of those times, we find no significant support in *Parker* for a shift in the law away from *Wong Sam*. Indeed *Parker* cites *Wong Sam* without question or discussion. (57 Cal.App.2d at p. 391.)

not forging "the handwriting of another with intent to prejudice, damage or defraud any person." (*People* v. *Knight* (1923) 74 Colo. 180, 181 [219 P. 1074].) In keeping with that understanding, California has long had a separate statute pertaining to the forgery of prescriptions. (Stats. 1927, ch. 775, § 1, pp. 1510-1511; see now Bus. & Prof. Code, § 4390.)

There is no claim in *Russel* that *Wong Sam* should not be followed. Its suggestion that any detriment to the interests of the public would count as a defrauding overlooks the California precedents concerning the application of section 470 where neither money nor property are to be obtained. It is dictum, since, as the court notes, the requisite intent was established by the fact that the documents forged by the appellant could defraud the college of the transcript itself. (See 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, pp. 753-755.) It is noteworthy that the opinion in *Russel* found the request for the transcript to be a " 'request for the payment of money, or the delivery of goods or chattels of any kind' " consistent with the kinds of specific documents listed in the first branch of section 470. (*People* v. *Russel, supra,* 214 Cal.App.2d at p. 453.)

The last case relied upon by the People reveals the utter novelty of placing the document at issue within the law of forgery. They note that "no one obtained a 'property right' in [*People* v. *Brown* (1951) 101 Cal.App.2d 740, 742 (226 P.2d 647)]." However, the offense in issue was not forgery. Rather it was a violation of former Elections Code section 11649 (now Elec. Code, § 29300) which provided in pertinent part that " 'Every person who subscribes to any initiative, referendum or recall petition or to any nominating petition a fictitious name, or who subscribes thereto the name of another, is guilty of a felony . . . .' " (*People* v. *Brown* (1951) 101 Cal.App.2d 740, 741 [226 P.2d 647].) A limitation of that offense to an intent to "defraud" one of a property right in the sense of the common law of forgery would have been nonsensical. ▉▉▉▉ Indeed, the separate enactment of former Election Code section 11649 supports the view that intent to defraud under section 470 is limited to purposes concerning money or property or identifiable legal rights. The provision was originally enacted as former section 472a, a part of the article inclusive of forgery. (Stats. 1915, ch. 43, § 1, p. 51.) If the conduct would have counted as an intent to defraud under section 470 there would have been no need for enacting former section 472a since the punishments prescribed were the same. (Compare former § 472a and § 473 as enacted in 1872.)

As this court explained in another context, the categorization of offenses by their allocation to different statutory structures may reveal how certain types of conduct should be treated and controlled. (Cf. *People* v. *Spann* (1986) 187 Cal.App.3d 400, 405-406 [232 Cal.Rptr. 31].) An examination of

the laws of California regulating political activities and the campaign and election process shows an extensive body of enactments focused exclusively on these matters. (See, e.g., Elec. Code, §§ 11700-12528; Gov. Code, § 81000 et seq.) The existence of this regulatory system suggests that political activities should be subjected to restrictions peculiar to that sphere. Numerous specific statutes prescribe criminal or civil sanctions for a variety of acts that interfere with the electoral process, including, in at least two instances, the forging of signatures. (See Elec. Code, §§ 29102 et seq., 29300, and 29731.) The conduct which defendant is alleged to have engaged in may be properly placed in this "political offense" category, which the Legislature has placed outside the ambit of the Penal Code, as with Election Code section 29300. This statutory pattern reinforces our view that the forging of President Reagan's signature to these political campaign tools is not punishable under section 470.

For all of the above reasons, we conclude that the evidence adduced at the grand jury proceedings does not establish an essential element of the crime of forgery. The superior court erred in denying defendant's motion to dismiss pursuant to section 995, and he is therefore entitled to the relief prayed for. (§ 999a.)

### Disposition

Let a peremptory writ of prohibition issue restraining respondent superior court from taking any further action against petitioner in Sacramento County case number 87992 except to dismiss the indictment.

Puglia, P. J., and Sparks, J., concurred.

The petition of real party in interest for review by the Supreme Court was denied April 26, 1990. Mosk, J., and Broussard, J., were of the opinion that the petition should be granted.