Filed 9/30/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E061024 |
| v. | (Super.Ct.No. SWF1301781) |
| JESSE EMERSON ISOM, | **OPINION** |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Angel M. Bermudez, Judge. Affirmed.

Maria Leftwich, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of section I, parts A and C.

A jury found defendant and appellant Jesse Emerson Isom guilty of (1) two counts of burglary (Pen. Code, § 459);[1] and (2) one count of possessing methamphetamine (Health & Saf. Code, § 11377, subd. (a)). Forgery (Pen. Code, § 470) is the crime underlying the burglary convictions (Pen. Code, § 459); defendant used an altered receipt when returning items for a cash refund at Walmart. Defendant admitted suffering (1) three prior convictions that resulted in prison terms (Pen. Code, § 667.5, subd. (b)); and (2) one prior strike conviction (Pen. Code, §§ 667 subds. (c) & (e)(1), 1170.12, subd. (c)(1)). The trial court sentenced defendant to prison for a term of four years.[2]

Defendant raises three issues on appeal. First, defendant contends Walmart's right to control its receipts is not a legal right protected by the forgery statute (§ 470); and therefore, defendant's burglary convictions must be reversed because defendant's actions did not damage any legal right. Second, defendant asserts there is a lack of substantial evidence to support the finding that he intended to defraud Walmart. Third, defendant contends the trial court erred in denying his motion for a new trial. We affirm the judgment.

---

[1] All subsequent statutory references will be to the Penal Code, unless otherwise indicated.

[2] The Abstract of Judgment reflects defendant's burglary conviction in Count 2 is a violent felony. We note this may be an error.

# I.

## FACTUAL AND PROCEDURAL HISTORY

On June 26, 2013, Karla Santiago was working as an asset protection associate at Walmart, in Murrieta. On that day, a customer service manager at Walmart called Santiago. The manager asked Santiago to review a surveillance video of defendant returning items with a fraudulent receipt. Defendant had been in the store the previous night (June 25) returning items, and was in the store again that day, June 26. The manager brought the fraudulent receipt to Santiago. The fraudulent receipt reflected it was issued by a Walmart in Bakersfield. Santiago contacted the Bakersfield store. The original Bakersfield receipt was sent to Santiago. The fraudulent receipt defendant used when returning items in Murrieta did not match the original Bakersfield receipt. The primary difference between the fraudulent receipt and the original Bakersfield receipt was that defendant had removed the coupon discounts from the fraudulent receipt. Santiago contacted the Murrieta Police Department.

City of Murrieta Police Officers Mikowski and Valle arrested defendant. At the time of defendant's arrest, he had various bulk items in a shopping cart, such as Dr. Scholl's shoe inserts, as well as "multiple receipts." One of the receipts was from a Walmart in Visalia.

Defendant waived his *Miranda*[3] rights and spoke to Officer Mikowski. Defendant said he was unemployed, and "for the past couple months" he had been

---

[3] *Miranda v. Arizona* (1966) 384 U.S. 436.

making purchases at Walmart with coupons and returning the items for their full value. Defendant would take the original receipt; cut off the subtotal and total, so as to remove the discounted price; then copy the receipt to his own receipt paper to make it appear as though the receipt had not been altered and that he had paid full price. Defendant used the altered receipts to obtain full price refunds.

Defendant told Officer Mikowski that, when defendant entered the Murrieta Walmart, "his intent was to return the items previously purchased at discount price and get full price back for them," using the altered receipt. Defendant explained that he believed the manufacturers of the purchased items would give Walmart the money for the coupon discount, i.e., the store would not lose money.

Walmart's general policy is to give full price refunds to people who return items purchased with coupons. For example, if a person bought a five dollar bottle of water with a one dollar coupon, so the person only paid four dollars, if the person returned the bottle of water with the receipt showing the discounted price, then Walmart would, as a matter of course, give the person the full five dollar refund. Thus, if defendant had not altered the receipt to remove the coupon discounts, i.e., he used the original receipt, he would have received a full price refund.

4

## II.

## DISCUSSION

A.     <u>INTENT TO DEFRAUD</u>

    1.     *BACKGROUND*

The felony underlying defendant's burglary convictions is forgery. (§ 470.) Forgery requires the intent to defraud. (§ 470, subd. (d).) "Defraud" means "to injure someone in their pecuniary or property rights." (*Lewis v. Superior Court* (1990) 217 Cal.App.3d 379, 393-394 (*Lewis*).)

During the trial, outside the presence of the jury, the trial court said to the prosecutor, "I'm really going to encourage you to think about what to do with this case tonight and decide what is a just result. Because the way that I see it, you have a situation where if a person does everything without altering the receipt, or even without the receipt, there's no violation of law. You can go into the store, use your coupons, make 400 bucks and go home, and apparently Walmart doesn't care, nor does the law. And I don't see that there's a legal violation under those circumstances." The trial court continued, "[T]he only reason that you have a legal violation here is, for whatever reason, [defendant] here decided—from the status of [the] evidence—to alter a receipt, which by all accounts does affect the business because now the business has a fraudulent document that could be floating around there. If there was an audit of the company, the company might have to explain to the IRS why there's two transaction receipts. I mean, I can see the impact [to] the company. But the end result here might

5

be a technical violation of the law." The prosecutor asked if the court would like to speak off the record, and the court and parties went into chambers, off the record.

During closing arguments the prosecutor made the following statements, "So what's forgery? One, did the defendant intend to pass or try to pass an altered receipt for profit. That's exactly what he did. That's exactly what he told [Officer] Mikowski that he did. He was trying to return a receipt to get money in return." After other statements, the prosecutor said, "Now, here's what I want to talk about: Defraud. It has a long definition in the jury instructions. But what's at issue here is did he intend to deceive another, Walmart, to cause loss of services or damage to a legal and financial right. And that's why I highlighted the coupon policy, the return and receipt policy . . . . It's Walmart's legal right and their financial right to handle their receipt policy, to not allow altered receipts. Imagine the chaos if they allowed altered receipts. That's their right as a business in our community. [¶] And what I wanted to point out is no loss is required. So I don't have to prove that Walmart suffered any loss. In fact, there was no testimony of that, because I don't have to prove it."

During the rebuttal argument, the prosecutor said, "You know, another example that I thought of, it's like stealing from a bank. You know, he would never think twice that stealing from a bank would be against the law. It's automatic, right? There's movies about it. We talk about bank robberies all the time, they're sensationalized on T.V. You walk into the bank and you slip them a note saying you've got a bomb. Right? May or may not be true. You take the bank's money. Well, the bank is FDIC insured, they get their money back. No crime? Does it get reimbursed by FDIC? Is

6

there no crime? Of course not. The crime is the fraud. Just like Walmart. Who cares if they're reimbursed. I don't have to prove loss; I have to prove the fraud. And it's the same thing here." The prosecutor told the jury a person can have "multiple intents." The jury was instructed that forgery encompasses causing "a loss of money, or something else of value, or to cause damage to, a legal, financial, or property right."

### 2. ANALYSIS

Defendant contends Walmart's right to control its receipts is not a property right protected by the forgery statute. In other words, the prosecutor asserted defendant injured Walmart's "legal right and their financial right to handle their receipt policy," i.e., injured a property right; defendant asserts there is no property right in a receipt policy, therefore, the element of intent to defraud cannot be legally satisfied in this case.

As explained *ante*, the felony underlying defendant's burglary convictions is forgery (§ 470.) Forgery requires the intent to defraud. (§ 470, subd. (d).) "Defraud" means "to injure someone in their pecuniary or property rights." (*Lewis*, *supra*, 217 Cal.App.3d at p. 393-394.)

While the prosecutor argued about a property right Walmart has in its receipt policy, the prosecutor also discussed a pecuniary injury. Specifically, the prosecutor discussed defendant's intent in the following terms: "He was trying to return a receipt [*sic*] to get money in return." The prosecutor also discussed a pecuniary injury when he compared defendant's crime to a bank robbery, i.e., the taking of money.

The prosecutor did not treat defendant's offense as a mere administrative act causing an administrative/paperwork-type harm, rather, the prosecutor discussed the

7

pecuniary aspect of the crime—defendant's act of taking money from Walmart. So, while the prosecutor did discuss a property right being injured, in terms of Walmart's receipt policy, that was not the only theory of injury the prosecutor argued—a pecuniary injury was also discussed. The prosecutor told the jury, "You can have multiple intents."

The prosecutor's arguments are relevant because defendant has raised a substantial evidence issue as well. We "cannot look to legal theories not before the jury in seeking to reconcile a jury verdict with the substantial evidence rule." (*People v. Kunkin* (1973) 9 Cal.3d 245, 251.) Thus, defendant's argument in this appeal can be understood as asserting (1) legally, there is no property right in a receipt policy or in controlling receipts, such that defendant could ever be guilty of burglary with the underlying offense being forgery; and (2) if there is such a property right, then there is a lack of substantial evidence in this case.

The property right issue is ultimately an academic question because the prosecutor had a second theory—pecuniary injury. We do not delve into the issue of whether a business has a property right in controlling its receipts because it is unnecessary to resolving this case—the pecuniary injury theory is sufficient. (See *People v. Travis* (2006) 139 Cal.App.4th 1271, 1280 [academic questions are moot].)

B.      <u>SUBSTANTIAL EVIDENCE</u>

Defendant asserts there is a lack of substantial evidence to support the finding that he intended to defraud Walmart.

8

Burglary consists of an act, e.g., entering a store, "with intent to commit grand or petit larceny or any felony." (§ 459.) A person may be found guilty of burglary upon entering a store with the requisite intent, regardless of whether any felony is actually committed after entering the establishment. (*People v. Montoya* (1994) 7 Cal.4th 1027, 1041-1042.) Forgery requires an intent to defraud. (§ 470, subd. (d).) "Defraud" means "to injure someone in their pecuniary or property rights." (*Lewis*, *supra*, 217 Cal.App.3d at p. 393-394.)

Defendant admitted he entered Walmart with the intent to obtain a full price refund for items he purchased at a discount. Defendant used an altered receipt to accomplish this task. Thus, defendant intended to leave Walmart with a refund for more money than he had paid for the items, and an altered receipt was his means of accomplishing this task. The foregoing evidence provides substantial support for the finding that defendant entered Walmart with the intent to defraud—he intended to injure Walmart's pecuniary rights by taking more money than he had paid for the items.

There are three items of evidence that one may think could cause problems with the finding of guilt in this case. We address the three items in turn. First, there is evidence reflecting Walmart could receive reimbursements for the coupons from the products' manufacturers, thus causing no loss to Walmart. A reimbursement is of no consequence. If it were, there would be no burglary when a burglar steals an item that is insured. Ultimately the victim does not suffer a pecuniary loss if an insurance company pays the full value for a stolen item. In this case it is a manufacturer, rather than an insurer, paying the difference between what defendant originally paid and the

9

amount he was refunded, but the concept is the same—the fact that the victim is made whole does not mean a crime did not occur.

Second, there is evidence that defendant believed Walmart would be reimbursed by the manufacturer and therefore defendant thought he was not harming Walmart. If a person steals an item believing the victim is insured and will be fully reimbursed, that does not make the person any less guilty of theft.

Third, there is evidence that, even without an altered receipt, defendant would have received a full price refund. A hypothetical that helps to illustrate this issue is as follows: If a person shoots another, with an intent to kill the other person, but the intended victim is already deceased at the time of being shot (unbeknownst to the shooter), of what crime is the shooter guilty? The shooter is guilty of attempted murder. (See *People v. Beardslee* (1991) 53 Cal.3d 68, 87-88 ["When a person commits an act based on a mistake of fact, his guilt or innocence is determined as if the facts were as he perceived them"].) In the instant case, defendant thought he needed the altered receipt to obtain a full price refund, the fact that he did not need the altered receipt does not cause him to be innocent—defendant thought he needed the altered receipt, and the intent associated with that thought is what the Penal Code is seeking to deter (§ 459).

C.     MOTION FOR NEW TRIAL

        1.     *BACKGROUND*

Defendant moved for a new trial on the basis of a lack of substantial evidence to support the burglary convictions. (§ 1181, subd. (6).) Defendant asserted the prosecution failed to present evidence that defendant "intended to damage / affect

10

Walmart's right to control their [*sic*] receipts." Defendant argued, "the mere fact that the receipt was altered does not tell the jury [defendant's] intent to specifically damage Walmart's legal, financial or property rights."

The prosecution opposed defendant's motion. The prosecution argued, "The very fact that Wal-Mart objected to the fraudulent receipt return demonstrates that Wal-Mart believed the defendant's transaction was trampling on their legal and financial right to maintain accurate receipts in their database. Furthermore, the fact that Ms. Santiago could call Bakersfield Wal-Mart to obtain a receipt demonstrates that the business relies on accurate receipts in its everyday dealings. Therefore this is indeed a legal and financial property right and it is irrelevant what their return procedure was."

When the court ruled on the motion, it said, "The issue of intent is one that is resolved, as far as I see, from the fact pattern itself, which is the person with an innocent intent, if you will, could literally, under the store policy, push[] the cart straight from the cashier across the way to the customer service location and receive the benefits of [w]hat would appear to be institutional policy and gain a windfall from the return of that property. So instead of doing that, what [defendant] does is he moves from one county to another. These are not even contiguous counties. There are intervening counties between Los Angeles to get to this point in Riverside County. It's not even the northernmost part of the county, it's well into the county of Riverside. That conduct itself is somewhat devious in light of the fact that now having read the probation officer's report, I see that [defendant's] entire or significant portion of his interest is tied

11

to Kern County. So it begs the question of why did you drive that far after you altered this instrument.

"Well, it's because he had the intent to commit fraud. So the jury's decision is properly based on the law. It is a violation of the law and undermines the integrity of the business financial records, and for that reason the motion for new trial is denied."

## 2. *ANALYSIS*

Defendant contends the trial court erred by relying on information outside the trial record, such as the probation report, when ruling on the motion for new trial.

A trial court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence." (§ 1181, subd. (6).) The trial court's review of the jury's verdict must " 'be confined to what the "evidence shows" (§ 1181, subd. (6).' " (*People v. Moreda* (2004) 118 Cal.App.4th 507, 514.) Thus, a trial court errs if it considers facts or evidence outside the trial record. (*Ibid.*)

The trial court said it considered information from the probation report, such as the fact that defendant primarily resided in Kern County. The trial court explained that this information helped it to determine defendant had a criminal intent when returning items in Murrieta. As the trial court phrased it, "[I]t begs the question of why did you drive that far after you altered this instrument." Accordingly, we conclude the trial court erred by relying on information outside of the trial record when ruling on the motion for new trial.

We now examine whether the trial court's error was harmless, in particular whether it is reasonably probable the trial court would have granted the new trial motion

12

had it not relied on information outside the trial record. (See *People v. Ngaue* (1991) 229 Cal.App.3d 1115, 1127 [reasonably probable standard applied when discussing harmless error related to a motion for new trial].)

Defendant contends the trial court relied on four pieces of information that were not in evidence before the jury: (1) Bakersfield is in Kern County; (2) there are intervening counties between Kern and Riverside Counties; (3) Murrieta is not in the northernmost portion of Riverside County; and (4) defendant primarily resides in Kern County.[4]

The first three facts relate to California geography, and the fourth fact relates to defendant's place of residence. During trial, there was evidence presented that defendant returned the items to the Walmart in Murrieta, on Murrieta Hot Springs Road, which is located in Riverside County. Defendant used an altered receipt from a Walmart in Bakersfield when returning the items. When defendant was arrested, he was in possession of a receipt from a Walmart located in Visalia.

The prosecutor asked Michael Stewart, comanager of the Murrieta Walmart, why a person might purchase an item at a Walmart in Los Angeles, and then return the item, with a fraudulent receipt at a Walmart in San Diego. Stewart explained that stores keep copies of their own receipts, so if an item were returned to the store of purchase, then the store could easily retrieve a copy of the original receipt. However, if an item is

---

[4] We take judicial notice of the fact that Bakersfield is located in Kern County because that fact is not reasonably subject to dispute and is capable of immediate and accurate determination. (Evid. Code, § 452, subd. (h).)

13

returned to a different store, then the store where the return is being made would need to make a telephone call to retrieve the original receipt and "sometimes the lines are so busy it takes a long time."

From the foregoing evidence, a trier of fact could gather that Murrieta is a considerable distance from Bakersfield and Visalia. Further, the county/locations and rough distances between Bakersfield and Murrieta are within the common knowledge of Riverside County jurors. If a prosecutor does not produce evidence on the basis that "the fact is one of common knowledge, the following test applies. First, 'is the fact one of common, everyday knowledge in that jurisdiction, which everyone of average intelligence and knowledge of things about him can be presumed to know; and [second,] is it certain and indisputable.' " (*People v. Davis* (2013) 57 Cal.4th 353, 360.) People who reside in Riverside County can be presumed to know that Murrieta is not in the northern end of the county, and can also be presumed to know that Bakersfield (a) is not in Riverside County, and (b) is a considerable distance from Murrieta. Accordingly, even if the three geographical facts could not be gathered from the evidence, they are within the common knowledge of Riverside County jurors. As a result, we conclude the trial court's reliance on the first three facts is harmless.

The trial court's reliance on the fourth fact, related to defendant's county of residence, is harmless because it is irrelevant that defendant spent most of his time in Kern County—either way, defendant went from Kern County to Riverside County to return goods. If defendant did not reside in Kern County, the trial court's same reasoning would apply, and could be drawn from the evidence *ante*, "why did

14

[defendant] drive that far after [he] altered this instrument." Regardless of where defendant lived, the trial evidence reflects he drove "that far"—from Bakersfield to Murrieta. Accordingly, the trial court's reliance on the fact from defendant's probation report, concerning where defendant primarily resides, is harmless because it is not reasonably probable a different result would have occurred absent the trial court's use of that fact.

## I.

## DISPOSITION

The judgment is affirmed.

MILLER _____
J.

We concur:

McKINSTER _____
Acting P. J.

KING _____
J.

15