Opinion
 

 ZENOVICH, J.
 

 Defendant Roger Ira Stein was charged with 18 counts of grand theft accomplished by means of embezzlement (Pen. Code, §§ 484, 487, subd. 1, 506) by an information filed in the Tulare County Superior Court on July 15, 1976. Defendant pleaded not guilty on July 16, 1976, and waived time for trial on July 19, 1976.
 

 
 *237
 
 Defendant moved to dismiss the information pursuant to Penal Code section 995; the motion was denied by the trial court. A petition to this court for a writ of prohibition was denied on September 23, 1976.
 
 (Stein
 
 v.
 
 Superior Court
 
 (5 Civ. 3153).)
 

 Defendant’s jury trial began on January 19, 1977. The trial culminated in a jury verdict finding defendant guilty on six counts of the information, counts II, IV, V, X, XI and XVII. The court declared a mistrial as to the remaining 12 counts and dismissed them pursuant to a motion by the prosecutor.
 

 Defendant was admitted to the California State Bar in 1970. The information charged him with 18 counts of grand theft by embezzlement from his client trust account during the period of September 29, 1972, through January 20, 1975. Defendant had a background in accounting through both undergraduate education and employment during law school.
 

 The prosecution proceeded on two theories to establish violations of Penal Code section 506. In counts I-VII, it was alleged defendant wilfully and unlawfully took money entrusted to him by six separate clients such that this trust account had a deficit balance. In counts VIII-XVIII, it was alleged defendant wrote checks upon his trust account for the satisfaction of personal obligations and expenses at a time the account balance was below the amount it should have contained to meet the proven claims of clients.
 

 When defendant entered private practice, he hired as a secretary a person without legal or bookkeeping experience. Although defendant initially told her to keep the client trust ledger cards up to date, he subsequently knew she was behind in her work and just told her to do it when she had the opportunity. Defendant admitted that after November 1971 he knew the trust account ledger cards were not current. By 1973, the trust account records were far behind and no efforts were made to update them.
 

 This meant defendant did not know how much each client had in the trust account. The only method of ascertaining how much a client had in the trust account was to do a detailed analysis of the client files, the trust account checkbook and the receipt book.
 

 
 *238
 
 Defendant’s trust account was overdrawn 14 times between October 6, 1972, and October 14, 1974. However, defendant claimed he did not suspect the trust fund was short until November 1974, even though he was aware the trust ledger cards had not been maintained. He did not transfer funds into the trust account at this time to alleviate the shortage. However, he claimed he had “made arrangements” to borrow the money when it was needed. He continued to write checks to himself and creditors even after knowing of the shortage.
 

 In April 1975, after defendant was aware of an investigation into his trust account affairs by the district attorney, defendant contacted Gus Janzen, an accountant. Defendant requested Janzen to bring the trust account and general account records up to date. Because of defendant’s lack of records, Janzen relied upon defendant and defendant’s wife in recreating the trust ledger cards. This work also uncovered evidence defendant had deposited and retained attorney fees in the trust account and had also deposited personal funds in the trust account. Defendant also conceded he often did not note the client whose account was being charged when writing checks to himself or creditors from the trust account.
 

 Raymond Wiltshire, a certified public accountant and attorney, conducted an audit for the Tulare County Grand Jury. The audit was based on defendant’s records, including those which defendant and his wife had prepared in the summer of 1975 after learning of the grand jury investigation. Some of the trust ledger cards showed a negative balance although, under generally accepted accounting procedures, a trust account should not have a negative balance. Based on cumulative calculations, the credit balances on the trust ledger cards were approximately $13,000 more than defendant’s trust account bank balance as of August 31, 1975; this figure even assumed defendant’s recreated records were correct. Wiltshire’s analysis was the shortage was caused by overspending trust account funds actually deposited, and not that money receipted was never deposited.
 

 The prosecution presented two attorneys, whom defense counsel stipulated were experts, who testified as to an attorney’s fiduciary duties to his clients, the generally accepted methods of handling client trust accounts, and the California State Bar Rules of Professional Conduct pertaining to trust accounts. Defendant also presented the testimony of two attorneys on these issues.
 

 
 *239
 
 Defendant’s defense was basically a denial of ever intentionally taking client trust money for his own uses.
 

 Defendant contends, among other things, that the trial court committed reversible error by instructing the jury on the California State Bar Rules of Professional Conduct. We conclude that this contention is meritorious and requires a reversal of the judgment.
 

 On January 18, 1977, defense counsel made a pretrial motion to prohibit the prosecution from presenting evidence or instructions relating to the California State Bar Rules of Professional Conduct adopted by the California Supreme Court. Counsel argued in part that to apply the Rules of Professional Conduct (to define the terms of the trust agreement) in conjunction with Penal Code section 506 would lead the jury to believe that a violation of such rules constituted a violation of Penal Code section 506. The motion was denied. The same argument is raised before this court.
 

 The instructions given to the jury stated, “Evidence has been presented
 
 tending
 
 to show that the defendant
 
 may have
 
 violated” the applicable rules, and this may be considered “only insofar as it
 
 may tend
 
 to prove that the defendant possessed the specific intent required . . . .” (Italics added.)
 

 We find that it was improper to use the professional rules of conduct to show that a violation of the rules, if any, would tend to prove that defendant possessed the specific intent required when, in fact, the violation of the rules, if any, could have occurred without any criminal intent. Even though the instructions did not presume a violation of the rules, the only reasonable inference that the jury could have drawn was that evidence of a violation was in fact evidence establishing the required intent to commit the crimes charged.
 

 “ ‘ “A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Citation.) It is axiomatic that ‘an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture or guesswork.’ ” ’ ”
 
 (Traxler
 
 v.
 
 Thompson
 
 (1970) 4 Cal.App.3d 278, 288 [84 Cal.Rptr. 211], citing
 
 Eramdjian
 
 v.
 
 Interstate Bakery Corp.
 
 (1957) 153 Cal.App.2d 590, 602 [315 P.2d 19].)
 

 
 *240
 
 In
 
 People
 
 v.
 
 Simms
 
 (1970) 10 Cal.App.3d 299, 311 [89 Cal.Rptr. 1], the court said: “Adverting to the question of relevancy, we observe that there is no precise formula for relevancy. It is only that evidence which logically, naturally and by reasonable inference tends to establish some fact. [Citations.] An inference may not be drawn, however, from another where the two are remote in time and/or are too speculative. [Citations.]”
 

 Witkin, California Evidence (2d ed. 1966) Circumstantial Evidence, section 313(2), page 275, states, “ ‘The general test of relevancy of indirect evidence is whether it tends logically, naturally, and by reasonable inference to prove or disprove a material issue.’ ” Here, we find the instructions improper in that the indirect evidence (violation of the rules, if any) does not tend logically, naturally and by reasonable inference to prove or disprove the state of mind (specific intent) of the crime charged.
 

 We then must inquire as to whether the error was prejudicial. (Cal. Const., art. VI, § 13.) As enunciated in Justice Friedman’s concurring opinion in
 
 People
 
 v.
 
 Reeder
 
 (1976) 65 Cal.App.3d 235, 243-244 [135 Cal.Rptr. 421], “In appraising prejudice, reviewing judges habitually turn to the test announced in
 
 People
 
 v.
 
 Watson
 
 [1956] 46 Cal.2d 818, 836 . . . —the judgment should be reversed only if, after reviewing the entire record, the court finds a ‘reasonable probability’ of a defense verdict had the error not occurred.” He goes on to state that, “Appellate judges are no longer safe to follow
 
 Watson
 
 as the sole standard of reversibility. The Supreme Court has approved a formula which it terms a ‘corollary’ of the
 
 Watson
 
 rule although it is really a marked divergence. The formula is expressed as follows: ‘Where the evidence, though sufficient to sustain the verdict, is extremely close, “any substantial error tending to discredit the defense, or to corroborate the prosecution, must be considered as prejudicial.” ’ ” (Citing
 
 People
 
 v.
 
 Gonzales
 
 (1967) 66 Cal.2d 482, 493-494 [58 Cal.Rptr. 361, 426 P.2d 929];
 
 People
 
 v.
 
 Briggs
 
 (1962) 58 Cal.2d 385, 407 [24 Cal.Rptr. 417, 374 P.2d 257].)
 

 Here, though the other evidence may have been sufficient to sustain the verdict, the instructions on the Rules of Professional Conduct of the California State Bar and the related testimony of the expert witnesses tended to discredit defendant and to corroborate the prosecution’s case. We therefore find the error prejudicial.
 

 For the trial court’s benefit on remand, we briefly discuss defendant’s contentions as to the court’s failure to define the term “fraudulent intent.”
 

 
 *241
 
 Defendant suggests the court was required to instruct the jury on the definition of fraudulent intent in language similar to that of CALJIC Nos. 15.03 or 15.26. These instructions deal with forgery and worthless checks and are not applicable to the “fraudulent intent” requirement of Penal Code section 506.
 

 However, in reviewing all of the instructions, we feel that the term “fraudulent intent” may be confusing and should be defined for the benefit of the jury. The fraudulent intent required for embezzlement in Penal Code section 506 is the intent unlawfully to deprive the owner of the property or “devote the same to his own use.” (21 Cal.Jur.3d (1975) Criminal .Law, § 2558, p. 377; Perkins, Criminal Law (2d ed. 1969) pp. 292-293.)
 

 The judgment is reversed.
 

 Franson, Acting P. J., and Best, J.,
 
 *
 
 concurred.
 

 Respondent’s petition for a hearing by the Supreme Court was denied August 15, 1979.
 

 *
 

 Assigned by the Chairperson of the Judicial Council.