[No. B065964. Second Dist., Div. Four. Oct. 20, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
SUSAN ANN VINCENT, Defendant and Appellant.

**COUNSEL**

Jack L. Schwartz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

William T. Harter, Ernest Martinez and Richard Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**EPSTEIN, J.**—Susan Ann Vincent appeals from the judgment of conviction entered after a jury found her guilty of forgery (Pen. Code, § 470) and making a false financial statement (Pen. Code, § 532a, subd. (1).) She asserts that the conviction for forgery must be reversed because a signature card cannot be the subject of a forgery; that there was no evidence of a false financial statement; and that prosecution for furnishing a false financial statement under Penal Code section 532a was precluded by the more specific statute of passing a check with insufficient funds (Pen. Code, § 476a, subd. (a).) We find insufficient evidence of a false financial statement and reverse the conviction on that count; in all other respects we affirm.

### FACTUAL AND PROCEDURAL SUMMARY

On October 22, 1990, appellant opened two new accounts at the Security Pacific Bank in Encino (bank). One account was in the name of Pacific Investments, with appellant as owner, and the other was a personal account. Appellant gave her name as Stassa Athans. Appellant filled out various bank forms for the new accounts, including a new account inquiry and reporting authorization, giving personal information about the signatory on the business account; a document entitled "Supporting Documentation Required for Opening Business Accounts"; and a request for "Ready Banking Service."

Appellant signed signature cards for the new accounts in the name of Stassa Athans. One of the signature cards, known as a "topaz card," is held at the center where the bank's checks are cashed. These documents indicated that Stassa Athans was the owner of the business, and appellant completed and signed them in the presence of a bank representative. She used the name Stassa Athans. Appellant also completed and signed a request for an automated teller machine card for the business account in the name of Stassa Athans. Appellant deposited $100 in cash to open the new accounts.

The bank officer asked appellant for identification and for a fictitious name statement in the name of the business giving her the legal right to do business as Pacific Investments. Appellant supplied the requested documents.

Appellant told the bank officer she was expecting a large check from one of her clients later in the day, and asked if it could be deposited on the same

day. The bank officer told her that this could be done. When appellant mentioned that the check would be delivered by messenger, the bank officer suggested that the messenger come directly to her rather than going to a teller, since the account would not be on the computer so soon.

Later in the day, a person brought in a check which appeared to be a cashier's check from the Bank of America in the amount of $500,000, along with a deposit slip in the name of Pacific Investments and Stassa Athans. The check was endorsed by Stassa Athans. The bank officer who had opened the account took the check to her manager because the amount was more than she was authorized to approve.

Appellant called the bank officer that afternoon and asked when the funds would clear. The officer told her that the bank would get back to her. Later that same afternoon, the bank was notified by the Bank of America that the $500,000 check was fraudulent and had not been issued by that institution. A bank employee notified the police, who instructed that appellant be asked to come into the bank. Appellant telephoned the bank two or more times to inquire about the check, but she did not return to the bank.

Los Angeles Police Detective Diruscio traced and arrested appellant, who identified herself as Susan Vincent. She admitted endorsing a $500,000 check. She told the detective she had received a call from a person named George and agreed to meet with him to discuss a real estate investment. She said that the check had been given to her by another individual, whose name she did not know. The detective's investigation revealed that appellant used several different names, Social Security numbers, and addresses.

Appellant was charged by information in count I with forgery of a check for $500,000; in count II with forgery of a bank signature card; and in count III with making a false financial statement. It was further alleged in all three counts that appellant had served a prior prison term for the crime of grand theft property.

The jury found appellant guilty of counts II and III, as charged in the information. Count I was dismissed on the People's motion for mistrial after the jury failed to reach a verdict on that charge. The court found the prior conviction to be true. Appellant was sentenced to two years in state prison on count II, with a one-year enhancement under Penal Code section 667.5, subdivision (b); sentence was stayed on count III pursuant to Penal Code section 654.

DISCUSSION

I

*Forgery of a Signature Card*

■ Appellant contends that a signature verification card cannot be the subject of a forgery within the meaning of Penal Code section 470 (all statutory references are to the Penal Code unless otherwise noted) because it is not an instrument of a type capable of "defrauding" as that term is used in the law of forgery. The statutory offense of forgery, "whether it be of making or sending of a fabricated instrument, requires an intention to defraud. [Citation.] More importantly, the controlling case law plainly indicates that only schemes to prejudice, damage or defraud persons as to their legal rights, generally money or property, are within the ambit of section 470." (*Lewis* v. *Superior Court* (1990) 217 Cal.App.3d 379, 398-399 [265 Cal.Rptr. 855].)

While the making of virtually any kind of false document affords an inference that the maker intends to deceive someone, ". . . only a document with apparent legal efficacy is naturally suited to perpetrate the kind of deception that is strictly speaking a defrauding." (217 Cal.App.3d at p. 388.) Appellant claims the signature card does not meet this standard.

A bank signature card "serves as a contract between the depositor and the bank for the handling of the account." (*Blackmon* v. *Hale* (1970) 1 Cal.3d 548, 556 [83 Cal.Rptr. 194, 463 P.2d 418].) Under section 470, "Every person who, with intent to defraud, signs the name of another person, or a fictitious person, knowing that he or she has no authority so to do, to, or falsely makes, alters, forges, or counterfeits, any . . . contract, . . . is guilty of forgery." We conclude that a bank signature card is within the express terms of the forgery statute.

■ Even if a signature card were not a contract or other document specified under section 470, it may still provide the basis for a forgery prosecution. The test is not the designation of the document; it has been repeatedly held that ". . . the forms of forgery set forth in section 470 are not exclusive." (*People* v. *Liberto* (1969) 274 Cal.App.2d 460, 463 [79 Cal.Rptr. 306]; *People* v. *Kagan* (1968) 264 Cal.App.2d 648, 655 [70 Cal.Rptr. 732].) "Whether the forged instrument is one of a particular name or character or, if genuine would create legal liability, is immaterial; the test is whether upon its face it will have the effect of defrauding one who acts upon it as genuine." (*People* v. *McKenna* (1938) 11 Cal.2d 327, 332 [79 P.2d 1065].)

A bank signature card contains an exemplar of the signature of the person or persons authorized to sign checks on the account, endorse checks for deposit into that account, and withdraw funds from that account. "The bank is authorized to honor withdrawals from an account on the signatures authorized by the signature card, . . ." (*Blackmon* v. *Hale, supra,* 1 Cal.3d at p. 556; *Perdue* v. *Crocker National Bank* (1985) 38 Cal.3d 913, 922-923 [216 Cal.Rptr. 345, 702 P.2d 503]; *Bullis* v. *Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 811-812 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) If a signature card is signed in the name of a fictitious person, the bank is thereby authorized to honor checks signed by that person, either as check writer or endorser, and further authorized to permit withdrawals from the account on that signature.

In this case, appellant's endorsement of the counterfeit check with the fictitious signature, in combination with her fictitious signature on the signature card, would have permitted the deposit of the counterfeit check into the newly opened account. Subsequent writing of checks on that account with the fictitious signature, or withdrawals from that account by means of the fictitious signature (or with an automatic teller machine card obtained with the fictitious signature) would have accomplished the object of the fraud. The bank signature card was a crucial document in the scheme to defraud the bank by causing the bank to act upon it as genuine. It is thus the proper subject of a forgery prosecution.

Appellant's argument to the contrary is based on *Lewis* v. *Superior Court, supra,* 217 Cal.App.3d 379. In *Lewis,* the court held that the fabrication of President Reagan's signature on letters of endorsement of a candidate for public office did not come within the definition of forgery as an instrument which could "prejudice, damage, or defraud" a person. The court explained: "Unless the consequential harm of the fabrication is a loss, damage, or prejudice of a legal right, generally a pecuniary or property right, there is no harm of the kind to which the statute is directed and hence no forgery. The attempted persuasion of another to vote does not implicate such a right." (*Id.* at pp. 383-384.)

The falsely signed letters in *Lewis* merely indicated President Reagan's endorsement of political candidates; the false signatures in this case were on bank documents which could, and almost did, lead to the bank's financial loss. *Lewis* does not aid appellant.

II

*Evidence of False Financial Statement*

Appellant was convicted in count III under section 532a, subdivision (1), which provides: "Any person who shall knowingly make . . . either directly

or indirectly . . . *any false statement in writing*, with intent that it shall be relied upon, *respecting the financial condition,* or means or ability to pay, of himself, or any other person, firm or corporation, in whom he is interested, or for whom he is acting, for the purpose of procuring in any form whatsoever, either the delivery of personal property, the payment of cash, the making of a loan or credit, the extension of a credit, . . . for the benefit of either himself or of such person, firm or corporation shall be guilty of a public offense." (Italics added.)

■ Appellant argues that a "statement in writing . . . respecting . . . financial condition" within the meaning of section 532a, subdivision (1) is not defined in the Penal Code, and thus must be interpreted in accordance with the definition of the term "financial statement" in Financial Code section 118. She then asserts that none of the documents relied on for this conviction—an application to open a bank account, a signature card, a request for an automated teller card, and a fraudulent check to the bank—is a financial statement within that definition.

We disagree with her first assertion, but agree with the second. Section 532a, subdivision (1) does not limit itself to a "financial statement," an accounting term defined by Financial Code section 118. Instead, it casts its net more broadly, proscribing "any false statement in writing . . . respecting the financial condition, or means or ability to pay, of himself, or any other person, firm or corporation, . . ."

The problem, however, is that even under this broader phrase, the written documents relied upon at trial are insufficient to establish the crime. Nowhere on the account applications, the request for automated teller card, or the inquiry regarding identification[1] were there any representations regarding the business or financial condition of appellant or her means or ability to pay. The false statements contained in these documents involved appellant's name, address, and Social Security number; they did not involve financial condition within the meaning of section 532a, subdivision (1).

Respondent argues that the crime was adequately established because the false statements were made and submitted for the purpose of obtaining a monetary benefit through the use of the account and the related automatic

---

[1]Appellant concedes that the $500,000 check could be considered a "financial statement" within the meaning of section 532a, but argues that motion 532a is a general statute and, as such, is supplanted by the more specific prohibition against uttering a check known to have insufficient funds. (§ 476a.) (See *People* v. *Jenkins* (1980) 28 Cal.3d 494, 505 [170 Cal.Rptr. 1, 620 P.2d 587].) Respondent explains, however, that prosecution on count III for false statement respecting financial matters was not based on the check, but on the bank documents and signature card. Section 476a had no application to that count.

teller card. While the evidence sufficiently demonstrates the intent necessary for the crime, it is nevertheless inadequate to establish the conduct proscribed by section 532a, subdivision (1).

At respondent's request, we granted rehearing to decide whether this result is affected by the 1982 amendment to section 532a. That amendment added a second sentence to subdivision (4) of the statute. As revised, the subdivision now reads (and read at the time of the events in this case): "Any person committing a public offense under subdivision (1), (2), or (3) shall be guilty of a misdemeanor, punishable by a fine of not more than one thousand dollars ($1,000), or by imprisonment in the county jail for not more than six months, or by both such fine and imprisonment. Any person who violates the provisions of subdivision (1), (2), or (3), by using a fictitious name, social security number, business name, or business address, or by falsely representing himself or herself to be another person or another business, is guilty of a felony and is punishable by a fine not exceeding five thousand dollars ($5,000) or by imprisonment in the state prison, or by both such fine and imprisonment, or by a fine not exceeding two thousand five hundred dollars ($2,500) or by imprisonment in the county jail not exceeding one year, or by both such fine and imprisonment."

Respondent argues that the use of the term "by" rather than the phrase "in addition to" means that the statute may be violated simply by making a false written statement of a name or other specified identification. The problem with this argument is that it ignores the antecedent language of the statute. Subdivision (4), as amended, provides that a violation of any of the preceding subdivisions by means of the false representation of identity renders the perpetrator liable to punishment as a felon. It is still necessary that one of the subdivisions be violated, and nothing in the amendment obviates any of the elements of these provisions. These subdivisions require a false statement respecting "financial condition, or means or ability to pay."

We have examined the legislative analyses of the amendment (as requested pursuant to Evidence Code section 459). The legislative documents furnished to us do not aid respondent, as they refer to violation of section 532a accomplished by means of a specified false identification. Instead, the materials underscore the evident purpose of the law: to impose a punishment enhancement when the violation is accomplished by use of a specified false identification.

Appellant's conviction for violation of section 532a must be reversed.

## DISPOSITION

The judgment is reversed as to count III, and affirmed as to count II.

Woods (A. M.), P. J., and Soven, J.,* concurred.

Respondent's petition for review by the Supreme Court was denied January 27, 1994.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.