[No. F020757. Fifth Dist. Feb. 3, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
LINDA MAY GAUL-ALEXANDER, Defendant and Appellant.

## COUNSEL

Marcia C. Levine, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Raymond L. Brosterhous II, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THAXTER, J.**—Appellant Linda May Gaul-Alexander was convicted by a jury of conspiracy to commit nonviolent prison escape (Pen. Code, § 182, subd. (a)(1)),[1] aiding and abetting the attempted escape of a prisoner (§ 4534), bigamy (§ 281), and forgery (§ 470). She was placed on five years' probation under various terms and conditions, including that she spend one year at a psychiatric treatment/correctional facility.

Appellant, a Los Angeles County parole agent, became romantically involved with one of her parolees, Randolph Alexander (Alexander), and married him after he was returned to custody for a 25-year term. Several months later, she forged a removal order to have Alexander transferred from the California Correctional Institution at Tehachapi (Tehachapi) to the Los Angeles County jail. Alexander was searched prior to transfer and officers found a handcuff key, wedding ring and $60 cash secreted in his person.

Appellant contends her forgery conviction must be reversed for two reasons: (1) there is no evidence she possessed the requisite intent to defraud because the removal order was not an instrument of the type capable of "defrauding" as that term is used in the law of forgery, and (2) the court erred in instructing the jury on the requisite intent for forgery. She also contends (3) her stipulation that at the time she married Alexander she was legally married to her prior husband was tantamount to a plea of guilty without *Boykin-Tahl*[2] advisements and waivers. We find no merit in any of her contentions and will affirm.

### FACTS

As pertinent to the issues raised on appeal, appellant married Alexander on April 2, 1992, while he was serving a 25-year term at Tehachapi. At the

---

[1]All statutory references are to the Penal Code unless otherwise noted.

[2]*Boykin* v. *Alabama* (1969) 395 U.S. 238 [23 L.Ed.2d 274, 89 S.Ct. 1709]; *In re Tahl* (1969) 1 Cal.3d 122 [81 Cal.Rptr. 577, 460 P.2d 449].

time, she was married to Gerard Gaul. Gaul testified he married appellant in 1968 and again in 1988. He was prosecuted for bigamy in 1963 for marrying another person and that marriage was annulled. He was told his first marriage had ended in divorce, but he had never seen any paperwork regarding the divorce. Appellant testified, when she married Alexander, she did not know whether she was legally married to Gaul. Gaul had been married before and neither she nor he ever had paperwork that confirmed his divorce.

When a prison inmate must appear in court, the court issues a removal order to the institution where the inmate is housed. On August 18, 1992, Tehachapi received a removal order for Alexander to appear at a child custody matter in Los Angeles County Superior Court on August 21, 1992. The custody matter involved a minor named Marquis Alexander. The removal order bore the signature of "Susan Thomas," a Los Angeles County Department of Children's Services social worker. Susan Thomas testified the signature was not hers. Further, Randolph Alexander had no connection to the Marquis Alexander matter and, there was no hearing on the case on August 21, 1992.

The first week of August 1992, appellant called Sergeant Boyle of the Los Angeles County Sheriff's Office Transportation detail. She identified herself as a parole agent and asked if Alexander could be transported to Los Angeles County a few days early so he could be interviewed about another child custody matter. Boyle told appellant that could be arranged but did not tell her when Alexander would be transported for security reasons. Appellant called twice more asking when Alexander would arrive. On August 20, Boyle told her there had been a problem and Alexander would not be transported to Los Angeles County.

Appellant testified she forged two removal orders—one for Alexander and another for inmate Michael Harris, who was housed with Alexander at Tehachapi—after Harris threatened her life if she did not comply with his request to have him transferred to the Los Angeles County jail. Appellant thought she had prepared ineffective removal orders because she had them signed by a court commissioner rather than a judge and she mistakenly believed an out-of-county transfer could only be approved by a judge. No evidence of the purported removal order for Harris was located.

### DISCUSSION

1. *Substantial evidence supports the forgery conviction even without evidence of intent to injure a "pecuniary-type" right.*

When viewing a challenge to the sufficiency of the evidence to sustain a conviction on appeal, ". . . the court must review the whole record

in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d 738, 16 A.L.R.4th 1255].)

■ Appellant contends there is no substantial evidence to support her forgery conviction. Although her acts of making and passing the forged removal order were designed to mislead, they did not demonstrate an intent to injure a pecuniary-type right, the requisite intent for conviction of forgery. Appellant is mistaken.

Section 470 provides in pertinent part that a person who does any of the following is guilty of forgery: (1) "with intent to defraud, signs the name of another person . . . knowing that he or she has no authority so to do"; (2) "falsely makes, alters, forges, or counterfeits," any of a long list of writings; (3) forges the handwriting of another; (4) attempts to pass any of the above; or (5) falsifies a judgment or a record which is by law evidence.

■ Forgery has three elements: a writing or other subject of forgery, the false making of the writing, and intent to defraud. (2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1989) Crimes Against Property, § 697, p. 792.) The subject of forgery is ordinarily an instrument or other writing which, if genuine, would create some legal right or obligation. (*Id.* at § 702, pp. 797-798.) Section 470 sets forth a long list of various documents which are the subject matter for forgery. This recital is supplemented by other statutes which prohibit special types of forgery, e.g., forgery of public or corporate seals, trademarks, drivers' licenses, telephone messages, public transportation tickets, narcotic or other prescriptions, etc. (Witkin & Epstein, *op. cit. supra*, §§ 701, 702, pp. 794-798.)

■ ■ Neither section 470 nor any other statute mentions forged removal orders. However, a writing not within those listed may fall under the part of section 470 covering a person who "counterfeits or forges the . . . handwriting of another" if, on its face, the writing could possibly defraud anyone. (*People* v. *Vincent* (1993) 19 Cal.App.4th 696, 700 [23 Cal.Rptr.2d 714] [forged bank signature card]; *People* v. *Russel* (1963) 214 Cal.App.2d 445, 452 [29 Cal.Rptr. 562] [forged request for college transcripts]; *In re Parker* (1943) 57 Cal.App.2d 388, 391 [134 P.2d 302] [forged certificate of birth]; *People* v. *Turner* (1896) 113 Cal. 278, 281 [45 P. 331] [forged certificate of recordation on back of deed]; *Ex Parte Finley* (1884) 66 Cal. 262 [5 P. 222] [forged divorce decree]; and see Witkin & Epstein, *op. cit. supra*, § 704, p. 799.)

The false writing must be something which will have the effect of defrauding one who acts upon it as genuine. (*People* v. *Vincent, supra,* 19 Cal.App.4th at p. 700; Witkin & Epstein, *op. cit. supra,* § 705, p. 800.) For example, in *People* v. *Wong Sam* (1897) 117 Cal. 29 [48 P. 972], the court held that defendant's letter written to a customs official urging him not to permit a Chinese subject to land in port, with the forged signature of the interpreter to the police court in Los Angeles, could not support a conviction of forgery. The false letter was not an instrument which could defraud anyone in the statutory sense but was merely an assault upon the veracity, reputation, and business standing of the person against whom it was aimed. Although possibly the basis for a criminal libel charge, it could not operate to defraud on its face and thus, was not a forgery. (*Id.* at p. 30.)

*Lewis* v. *Superior Court* (1990) 217 Cal.App.3d 379 [265 Cal.Rptr. 855], on which appellant relies, reached the same result on analogous facts. Lewis was charged with forging President Reagan's signature on letters of endorsement mailed on behalf of state legislative candidates. The court held that section 470 applies only to fabricated documents that prejudice a legal right, usually a pecuniary or property right; it does not apply to a political letter or endorsement.

"Unless the consequential harm of the fabrication is a loss, damage, or prejudice of a legal right, generally a pecuniary or property right, there is no harm of the kind to which the statute is directed and hence no forgery. The attempted persuasion of another to vote does not implicate such a right." (217 Cal.App.3d at pp. 383-384.)

According to *Lewis,* the forgery statute was not intended to encompass all harm that flows from the deceptive use of false documents. Section 470 is derived from the common law and its reach is thereby limited. At common law, forgery was the false making, with intent to defraud, of any writing which, if genuine, would apparently be of legal efficacy, or the foundation of a legal liability. Therefore, false writings that give rise to no legal duty (i.e., letters recommending one as creditworthy or as an eminent physician) are beyond the reach of the statute. (*Lewis* v. *Superior Court, supra,* 217 Cal.App.3d at pp. 383, 391-392.)

■ Appellant submits, although her acts may have been designed to mislead, they did not constitute forgery under *Lewis* because they were not intended to injure any pecuniary-type right. She maintains, the purpose of the removal order was merely to move Alexander temporarily from one facility to another. The order did not alter his sentence or change his prison classification. Therefore, the fabricated document could not "defraud" within the meaning of section 470.

We do not find appellant's argument persuasive. First, it ignores the jury's finding that the forgery constituted an overt act which supported her conviction for conspiracy to commit prison escape. By so concluding and by convicting appellant of aiding an attempt to escape prison, the jury must have found that, in forging the removal order, appellant intended to effect Alexander's escape from prison rather than to merely move him to a facility closer to her home. Second, appellant reads *Lewis* too broadly. The prohibitory ambit of the forgery statute includes a writing which apparently affects a legal right. "[I]ntent to defraud under section 470 is limited to purposes concerning money or property or *identifiable legal rights*." (*Lewis* v. *Superior Court*, *supra*, 217 Cal.App.3d at p. 401, italics added.)

The identifiable legal right which appellant intended to alter by forging the removal order was the right of the state, acting through officials of the Department of Corrections, to incarcerate Alexander in prison for the term of his lawfully entered sentence resulting from his prosecution. While this case presents a novel application of the forgery statute because the object of appellant's forgery was to fraudulently "obtain" an individual rather than money or property, in all other respects, it is indistinguishable from others where a party fabricated documents in order to gain something that was not rightfully hers.

Appellant contends that under *Lewis*, a general harm to the public interest is insufficient to satisfy the intent to defraud element of forgery. She points to language in which *Lewis* criticizes the statement in *People* v. *Russel*, *supra*, 214 Cal.App.2d at page 452 that the fraud involved in forgery may be against the public rather than a particular individual. *Lewis* states: "[*Russel*'s] suggestion that any detriment to the interests of the public would count as a defrauding overlooks the California precedents concerning the application of section 470 where neither money nor property are to be obtained. It is dictum, since, as the court notes, the requisite intent was established by the fact that the documents forged by the appellant could defraud the college of the transcript itself. . . . It is noteworthy that the opinion in *Russel* found the request for a transcript to be a ' "request for the payment of money, or the delivery of goods or chattels of any kind" ' consistent with the kinds of specific documents listed in the first branch of section 470. (*People* v. *Russel*, *supra*, 214 Cal.App.2d at p. 453.)" (*Lewis* v. *Superior Court*, *supra*, 217 Cal.App.3d at p. 401.)

Even if we were to agree with the *Lewis* court's rejection of the suggestion in *Russel* that "any detriment to the interest of the public would count as a

defrauding,"[3] when read in context the language relied on by appellant does not support her on the facts of this case. In criticizing *Russel*'s statement, the *Lewis* court was explaining why the intangible harm to the public flowing from forged letters endorsing political candidates was insufficient to support a forgery conviction. While the intent of the letters was to affect the judgment of the electorate, there was no intent to deprive them of property or any legal right. Here, by contrast, the forged removal order was intended to deprive a specific public agency (the Department of Corrections) of a tangible legal right, Alexander's lawful custody.

The evidence, including that of the intent to defraud, was sufficient to support appellant's forgery conviction.

*2. The court did not err in instructing the jury on the intent to defraud necessary for a forgery conviction.*

In a related argument, appellant contends the jury was erroneously instructed on the intent to defraud element of forgery. The trial court instructed the jury with CALJIC No. 15.26, which provides: "An intent to defraud is an intent to deceive another person for the purpose of gaining some material advantage over that person, or to induce that person to part with property or to alter that person's position to his, her or [its] injury or risk, and to accomplish that purpose by some false statement, false representation of fact . . . or by any other artifice or act designed to deceive." At trial, appellant did not object to any of the instructions given by the court, including CALJIC No. 15.26, nor did she request additional or alternate instructions.

On appeal, appellant contends CALJIC No. 15.26 incorrectly defines the intent element of forgery. She argues, under *Lewis* v. *Superior Court, supra,* 217 Cal.App.3d at pages 383-384, the jury should have been instructed that to convict her of forgery, they had to find she intended to cause a loss or damage to the legal, monetary or property rights of another. Appellant also contends CALJIC No. 15.26 allowed the jury to find intent to defraud if she simply caused another person to alter his position to his injury or risk. Thus, the instruction permitted the jury to convict her for conduct not within the scope of the forgery statute. Neither contention has merit.

The gist of appellant's first contention is that CALJIC No. 15.26 inadequately defined the intent to defraud element of forgery under the holding in

---

[3]Several eminent commentators on criminal law assert that a general intent to injure members of the public is sufficient to support a forgery conviction. (See 2 Witkin & Epstein, *op. cit. supra,* Crimes Against Property, § 715, p. 808; 4 Torcia, Wharton's Criminal Law (14th ed. 1978) Forgery and Related Offenses, § 494, p. 117; Perkins & Boyce, Criminal Law (3d ed. 1982) ch. 4, § 8, Forgery-Forged Instrument, p. 428.)

*Lewis.* ■ In criminal cases, even in the absence of a request, the trial court must instruct on the general principles of law relevant to the issues raised by the evidence. The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury's understanding of the case. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 323 [185 Cal.Rptr. 436, 650 P.2d 311].) ■ Under this rule, the trial court was obligated to instruct the jury on the intent to defraud element of forgery. The court did so by giving CALJIC No. 15.26, the sanctioned instruction for the fraudulent intent underlying criminal writings. (*People* v. *Stein* (1979) 94 Cal.App.3d 235, 241 [156 Cal.Rptr. 299].)

CALJIC No. 15.26 defines intent to defraud as an intent to deceive for the purpose of gaining a material advantage over the person deceived or inducing that person to part with property or alter his position to his injury or risk. In other words, the intent behind the fabrication must be to cause demonstrable or measurable harm to another. The instruction, in effect, tells the jury they must find appellant intended to cause a loss or damage to the legal, monetary or property rights of another to find the requisite intent to defraud. Thus, CALJIC No. 15.26 is not inadequate or incomplete under *Lewis.*

Appellant next contends CALJIC No. 15.26 permitted the jury to convict her of forgery if her fabrication merely caused another to alter his position to his injury or risk. Thus, she could be convicted if the jury concluded she simply intended to have Alexander transferred to the county jail from prison, and such transfer had the potential for injury or risk.[4] She submits a purpose to cause another to alter his position to his injury or risk does not constitute the requisite intent to defraud for forgery because it does not necessarily damage or prejudice a legal, monetary, or property right. We disagree. Under the facts of this case, the forged removal order caused both a change in position and a potential loss of a legal right. The instruction could not have misled the jury or removed the intent to defraud element from its consideration in this case.

Appellant admitted she forged the social worker's name on the removal order form and placed the form into the judicial system where it could be acted upon. The form was acted upon; the magistrate signed the order and correctional officials at Tehachapi prepared to transport Alexander to the Los Angeles County jail pursuant to the apparently valid removal order. The fabricated order caused correctional officials to alter their positions to their risk or injury—they readied Alexander for transport which increased the risk

---

[4]A sheriff's deputy testified there is a risk of escape when prisoners are transported between facilities.

he might escape their lawful custody. The officers' alteration of position, however, could not have stood alone as a basis for the jury's verdict because it was inseparable from the department's potential loss of legal custody.

As noted above, the jury convicted appellant of conspiracy and aiding an attempted prison escape. Therefore, it must have rejected her testimony that by forging the removal order, she only intended to have Alexander removed to Los Angeles temporarily so she could visit him more frequently, and instead it concluded she intended to facilitate his escape from custody. Thus, under CALJIC No. 15.26, the jury could not have convicted appellant for conduct not within the scope of the forgery statute.

3. *Appellant's stipulation that at the time she married Alexander she was legally married to her prior husband was not tantamount to a guilty plea or a "slow-plea" without Boykin-Tahl waivers.*

■ To establish the crime of bigamy, the prosecution must show the previous status of the defendant as married and an additional marriage during that time. (§ 281; *People* v. *O'Neal* (1948) 85 Cal.App.2d 226, 229 [192 P.2d 833].) ■ At trial the parties stipulated: "On April 2, 1992, the date which [appellant] married Randolph Darin Alexander she was still legally married to Gerald [*sic*] H. Gaul." Appellant contends her stipulation was invalid because it was tantamount to a plea of guilty without *Boykin-Tahl* advice and waivers. (*Boykin* v. *Alabama, supra,* 395 U.S. at pp. 242-244 [23 L.Ed.2d at pp. 279-280]; *In re Tahl, supra,* 1 Cal.3d at pp. 130-131.)

■ Under the *Boykin-Tahl* rule, a guilty plea is not valid unless the record reflects (1) the defendant had been advised of and waived his right to a jury trial, to confront and cross-examine witnesses, and against self-incrimination (*People* v. *Marella* (1990) 225 Cal.App.3d 381, 385 [275 Cal.Rptr. 232]), or (2) the plea is voluntary and intelligent under the totality of the circumstances. (*People* v. *Howard* (1992) 1 Cal.4th 1132, 1178 [5 Cal.Rptr.2d 268, 824 P.2d 1315].)

■ Whether appellant's stipulation was valid without the *Boykin-Tahl* requirements turns, first, on whether it constituted an evidentiary admission or whether it admitted every element necessary to conviction. (*People* v. *Adams* (1993) 6 Cal.4th 570, 573 [24 Cal.Rptr.2d 831, 862 P.2d 831].) ■ An evidentiary admission does not implicate *Boykin-Tahl* requirements. The *Adams* court noted, when a defendant has pleaded not guilty and stipulates to one or more, but not all, of the evidentiary facts necessary to a conviction of an offense, the concerns which prompted the *Boykin* holding are not present. While the stipulation must be voluntary and intelligent, the

court need not ensure that this appears on the face of the record. (*People* v. *Adams*, *supra*, at pp. 581-582.) The *Adams* court concluded that defendant's stipulation he had been released on bail when the offense charged against him was committed was an evidentiary admission rather than an admission of the truth of the section 12022.1 allegation because it did not admit all the elements necessary for imposition of the enhancement. The People still had to prove defendant had committed the primary offense. (*People* v. *Adams*, *supra*, at p. 582.)

■ The People submit appellant's stipulation was not tantamount to a guilty plea because it established only the actus reus of bigamy. The prosecution still had to prove the requisite mens rea for completion of the offense. The People are correct. Although section 281 does not refer to intent in the definition, wrongful intent is an element of the crime of bigamy. (*People* v. *Vogel* (1956) 46 Cal.2d 798, 801-802 [299 P.2d 850].) Therefore, appellant's admission of an act of marriage to Alexander while still married to Gaul was not tantamount to a plea of guilty. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction . . . ." (*Boykin* v. *Alabama*, *supra*, 395 U.S. at p. 242 [23 L.Ed.2d at p. 279].)

By citing *Bunnell* v. *Superior Court* (1975) 13 Cal.3d 592 [119 Cal.Rptr. 302, 531 P.2d 1086], and *People* v. *Wright* (1987) 43 Cal.3d 487 [233 Cal.Rptr. 69, 729 P.2d 260], appellant implicitly argues that her stipulation below amounted to a "slow plea" as to which advisements and waivers were required. We first note, as pointed out by respondent, that the *Bunnell* slow plea doctrine has been applied only when there is a "submission," that is "when a defendant gives up his right to trial by jury and, unless otherwise specified, the right to present additional evidence in his own defense and agrees the court can decide the case on the basis of the transcript of prior proceedings." (*People* v. *Robertson* (1989) 48 Cal.3d 18, 39-40 [255 Cal.Rptr. 631, 767 P.2d 1109].) Manifestly, here appellant did not submit the bigamy count on the preliminary hearing transcript[5] for decision by the court but, instead, stipulated to a fact for the jury's consideration. Appellant does not refer us to any "slow plea" cases involving such circumstances, and we will not extend the *Bunnell* doctrine absent compelling authority.

Even if we were to apply the slow plea doctrine, however, we would find no basis to reverse.

In *People* v. *Wright*, *supra*, 43 Cal.3d 487, the Supreme Court set forth explicit guidelines for determining when an appellant's submission constitutes a slow plea. ■ A "slow plea" is " 'an agreed-upon disposition of a

---

[5]In fact, appellant waived her right to a preliminary hearing so there was no such transcript.

criminal case via any one of a number of contrived procedures which does not require the defendant to admit guilt but results in a finding of guilt on an anticipated charge and, usually, for a promised punishment.' Perhaps the clearest example of a slow plea is a bargained-for submission on the transcript of a preliminary hearing in which the only evidence is the victim's credible testimony, and the defendant does not testify and counsel presents no evidence or argument on defendant's behalf. Such a submission is 'tantamount to a plea of guilty' because 'the guilt of the defendant [is] apparent on the basis of the evidence presented at the preliminary hearing and . . . conviction [is] a foregone conclusion if no defense [is] offered.' [Citations.]

"Submissions that are not considered slow pleas include those in which (1) the preliminary hearing involves substantial cross-examination of the prosecution witnesses and the presentation of defense evidence or (2) the facts revealed at the preliminary examination are essentially undisputed but counsel makes an argument to the court as to the legal significance to be accorded them. [Citation.]

"The wide variety of submissions that fall between these extremes, however, present troublesome classification problems. When the defendant reserves the right to testify or offer evidence and the record shows no sign of negotiations between defendant and prosecution, the submission may or may not be a slow plea. Some defendants submit their cases on the transcript simply to achieve the effect of a guilty plea without actually having to admit guilt in open court and on the record. Others submit not to contest guilt but to avoid expensive or burdensome trials or to impress upon the trial judge the mitigating factors for sentencing. Some defendants appear to concede guilt as to one or more of the offenses but contest it as to others.

"An appellate court, in determining whether a submission is a slow plea, must assess the circumstances of the entire proceeding. It is not enough for a reviewing court to simply count the number of witnesses who testified at the hearing following the submission. A submission that prospectively appeared to be a slow plea may turn out to be part of a full-blown trial if counsel contested the sufficiency of evidence for those counts or presented another potentially meritorious legal argument against conviction. Conversely, a submission that did not appear to be a slow plea because the defendant reserved the right to testify and call witnesses or to argue the sufficiency of the evidence [citation] may turn out to be a slow plea if the defense presented no evidence or argument contesting guilt.

"If it appears on the whole that the defendant advanced a substantial defense, the submission cannot be considered to be tantamount to a plea of guilty." (*People* v. *Wright, supra,* 43 Cal.3d at pp. 496-497.)

█ Following the command in *Wright*, we must assess the circumstances of the entire proceeding to determine whether appellant's factual stipulation amounted to a slow plea. We first note that in her testimony appellant did present a defense—a bona fide and reasonable belief that facts existed that left her free to marry. (*People* v. *Vogel, supra,* 46 Cal.2d at p. 801.) After all evidence was presented, though, defense counsel in closing argument indicated that appellant had no defense to the bigamy charge and suggested the jury find her guilty on that count. The jury was not instructed on the defense indicated by appellant's testimony.

On one hand appellant's testimony supporting a possible defense leads to the conclusion, under *Wright,* that appellant's stipulation was a factual concession probably offered for court convenience, rather than a slow plea of guilty. (*People* v. *Wright, supra,* 43 Cal.3d at p. 496.) On the other hand, the failure to assert that defense in argument or jury instructions weighs in favor of treating the stipulation as a slow plea. (*Id.* at pp. 496-497.)

On balance, however, we conclude that because appellant advanced a substantial defense to the five counts charged,[6] her stipulation regarding the validity of her prior marriage did not constitutionally mandate *Boykin-Tahl* advisements.

"Sometimes, a defendant's best defense is weak. He may make a tactical decision to concede guilt as to one or more of several counts as part of an overall defense strategy. A submission under these circumstances is not a slow plea, and the trial court is not constitutionally compelled by *Boykin* and *Tahl* to administer the guilty-plea safeguards to assure that the tactical decision is voluntary and intelligent. The advisements and waivers in such a case are required only as a matter of the judicial policies that underlie our decision in *Bunnell.*" (*People* v. *Wright, supra,* 43 Cal.3d at p. 497.)

That is the case here. On the whole, appellant vigorously defended against the charges brought against her. In closing argument, her counsel apparently made a tactical decision to offer the jury a chance to compromise its verdict by only convicting her of one charge—the one least likely to inhibit her ability to secure work in her profession. Under the circumstances, the proceedings were not the equivalent of a plea of guilty. Accordingly, failure to give advisements was not error subject to the reversible per se standard.

█ If the stipulation amounted to a submission short of a slow plea, failure to give advisements warrants reversal only if it is reasonably probable a result more favorable to defendant would have been reached if she had

---

[6]Appellant was found not guilty of sending an item into a prison to aid an escape (§ 4535).

been properly advised. (*People* v. *Dakin* (1988) 200 Cal.App.3d 1026, 1033 [248 Cal.Rptr. 206].)

 Nothing in the record supports an inference that the facts recited in the stipulation were inaccurate or that, without the stipulation, they would not have been easily proved by the prosecution. Thus, appellant cannot establish prejudice and there is no reasonable probability the outcome would have been more favorable to appellant had she been properly advised.

DISPOSITION

Judgment affirmed.

Martin, Acting P. J., and Stone (W. A.), J., concurred.

Appellant's petition for review by the Supreme Court was denied April 26, 1995.