### In re HEDDINGS LUMBER & BUILDING SUPPLY, INC., Debtor.

**Richard J. Spear, Trustee, Appellant and Cross–Appellee,**

v.

**Global Forest Products, Appellee and Cross–Appellant.**

**BAP Nos. NC–98–1232–MeRPe, NC–98–1233–MeRPe.**

**Bankruptcy No. 96–40632 NS.**

**Adversary No. 97–4173–AN.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Sept. 24, 1998.

Decided Dec. 23, 1998.

728

Dennis D. Davis, Goldberg, Stinnett, Meyers & Davis, San Francisco, CA, for Appellant.

Irving J. Kornfield, Kornfield, Paul & Bupp, Oakland, CA, for Appellee.

Before: MEYERS, RUSSELL and PERRIS, Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

The bankruptcy court dismissed the complaint against Global Forest Products ("Global") for avoidance of a fraudulent transfer, on the basis that the debtor did not have an interest in the transferred funds. The Chapter 7 trustee appealed, and Global filed a cross-appeal.

We **AFFIRM.**

## II

## FACTS

Heddings Lumber & Building Supply, Inc. ("Debtor") operated a hardware and lumber store in San Ramon, California. Dean Auch and his wife Florine Auch were the Debtor's sole shareholders. They were also sole shareholders of Pleasanton Lumber Company ("Pleasanton"), which operated a hardware and lumber store in Pleasanton, California. Both the Debtor and Pleasanton did business under the fictitious business name "Dean's Lumber & Hardware, Inc." ("Dean's Lumber").

On October 5, 1994, the Debtor's Board of Directors passed a corporate resolution authorizing the opening of a bank account at the Bank of the West. The resolution stated that deposits from both the Debtor and Pleasanton would be included in the account. The next day, Pleasanton's Board of Directors passed an identical resolution. An account at the Bank of the West ("Account") was opened under the name Dean's Lumber.

The Debtor moved out of its premises in November 1995 and sold its inventory. It filed a Chapter 11 bankruptcy petition on January 24, 1996. The Account was closed shortly thereafter.

The bankruptcy case was converted to Chapter 7 on October 23, 1996. Richard J. Spear ("Trustee"), the Chapter 7 trustee, filed a complaint to recover from Global alleged fraudulent and postpetition transfers from the Account from October 17, 1995 to January 26, 1996.

A trial was held in February 1998. After the Trustee put on his case, Global moved to dismiss the complaint on the basis that the Trustee had not shown that the transfers were from property of the estate.

The parties submitted additional briefs, and at a telephonic hearing on March 23, 1998, the court announced it would grant Global's motion to dismiss. It stated that the issue was not whether the Trustee had traced the ownership of assets transferred to Global, but rather whether the evidence established that the Debtor had an interest in the transferred property. The court deter-mined that "although the Debtor may have held bare legal title to the money by dint of the fact that the account from which it was transferred was in the Debtor's name, the Debtor did not have sufficient incidence of ownership such as to have an interest in the property for purposes of § 548(a)."

A judgment was entered dismissing the complaint, and the Trustee appealed. Global filed a cross-appeal, challenging several evidentiary rulings made by the bankruptcy court.

## III

## STANDARD OF REVIEW

Findings of fact are reviewed for clear error and conclusions of law are reviewed *de novo. In re Van De Kamp's Dutch Bakeries,* 908 F.2d 517, 518 (9th Cir.1990).

## IV

## DISCUSSION

A. *The Appeal*

■ To avoid a transfer under Bankruptcy Code ("Code") Section 548(a)(2), a bankruptcy trustee must prove that: (1) the transfer involved property of the debtor; (2) the transfer was made within one year of the bankruptcy filing; (3) the debtor did not receive reasonably equivalent value for the property transferred; and (4) the debtor was insolvent, made insolvent by the transaction, operating or about to operate without sufficient capital or unable to pay debts as they become due. *In re United Energy Corp.,* 944 F.2d 589, 594 (9th Cir.1991).

The fraudulent transfer action was dismissed for the Trustee's failure to demonstrate that the transferred funds were property of the Debtor. The Trustee contends that this determination was erroneous. He asserts that because Global did not satisfy its burden to trace the funds in the Account, it did not prove the funds were held in constructive trust for Pleasanton. The Trustee also alleges that Global had no standing to argue that Pleasanton had an interest in the funds.

However, Global did not assert a constructive trust over funds held by the Debtor. Instead, Global argued that the Trustee did not satisfy his burden to prove that the Debtor had a legal interest in the Account. Before determining whether the funds may be traced to a party other than the debtor, it must be determined that the funds originated with the Debtor.

■ We hold that the Trustee failed to prove that the transferred money was the Debtor's. We agree with Global's contention in its cross-appeal that the court should not have admitted the bank signature card; and without the signature card there was no evidence that the Account was in the Debtor's name. A signature card memorializes the relationship between the depositor and the bank. *Chazen v. Centennial Bank,* 61 Cal. App.4th 532, 537, 71 Cal.Rptr.2d 462 (1998). It operates as a contract between the depositor and the bank for administration of the account. *People v. Vincent,* 19 Cal.App.4th 696, 700, 23 Cal.Rptr.2d 714 (1993).

■ The signature card was hearsay as defined in Fed.R.Evid. 801(c), as it was a written statement, other than one made by a declarant testifying at trial, offered to prove the truth of the matter asserted. The signature card was not admissible under Fed. R.Evid. 803(6), the business records exception to the hearsay rule, since there was no foundation laid through the testimony of a custodian or otherwise qualified witness that it was (1) the regular practice of that business to make the record; (2) kept in the regular course of that business; (3) made by a person with knowledge; and (4) made at or near the time the event recorded. In fact, Dean Auch testified that it was not the business of the Debtor to keep such records.

The Trustee asserts that the transferred funds should have been presumed to be estate property, citing *In re Bullion Reserve of North America,* 836 F.2d 1214 (9th Cir.1988). In that case, concerning an avoidable transfer proceeding under Code Section 547, the Court of Appeals held that money transferred by the debtor from commingled bank accounts under the debtor's control "presumptively constitutes property of the debtor's estate," because the money could have been used to pay other creditors. *Id.* at 1217.

This case does not apply here. The funds in *Bullion Reserve* were given to the debtor by individual investors in the debtor's Ponzi scheme. The debtor then commingled the funds in one bank account. The debtor in *Bullion Reserve* controlled the account.

■ Here, in contrast, it was not established that the Debtor owned the funds. It is questionable whether the Debtor controlled the Account. Though the Account was maintained on the books and records of both the Debtor and Pleasanton as an asset of the Debtor, the bank statements were mailed to Pleasanton's address. All of the December 1995 and January 1996 electronic deposits in the Account were from Pleasanton. The Account, though used by both the Debtor and Pleasanton, was in the name of Dean's Lumber.

Global dealt with Dean's Lumber. The merchandise from Global was purchased pursuant to a credit application in the name of Dean's Lumber. All the invoices giving rise to the transfers were billed to Dean's Lumber and all the checks written on the Account bear the name Dean's Lumber. Global had no reason to believe it was conducting business with the Debtor, an insolvent corporation. Thus, there is no legal or logical basis for placing the burden on Global to establish that the funds in the account were not property of the Debtor. Rather, it was the Trustee's burden under Section 548 to demonstrate that the funds paid to Global from the Dean's Lumber account were property of the Debtor. The Trustee did not satisfy this burden.

## B. *The Sanctions Motion*

Global has brought a motion seeking sanctions against the Trustee's counsel. Global asserts that the Trustee's appellate brief cited cases concerning constructive trusts, even though Global had never sought to impose a constructive trust. Global also contends that the Trustee selectively and misleadingly quoted the case of *In re Chase & Sanborn,* 813 F.2d 1177 (11th Cir.1987).

■ We deny the motion for sanctions. First, the appeal is not frivolous. *See In re Nat'l Mass Media Telecommunication Sys., Inc.*, 152 F.3d 1178, 1181 (9th Cir.1998). Second, constructive trust issues are closely related to the issue of whether the Account was property of the Debtor, and therefore citing cases concerning constructive trusts is not wrongful. Third, we do not find the reference to *In re Chase & Sanborn* misleading.

## V

### CONCLUSION

The Debtor was not presumed to own the funds in the Account and the Trustee failed to show that the Debtor owned the funds. We **AFFIRM** the order dismissing the complaint.

We **DENY** Global's motion for sanctions.